[File No. Cr. 153.]

ED H. HAGER, ON BEHALF OF CHARLES A. VOSBURG, Petitioner, v. MARTIN HOMUTH, as Sheriff of Stutsman County, North Dakota, Respondent.

(276 N. W. 668.)

Opinion filed December 15, 1937. Rehearing denied December 31, 1937.

*Hugo P. Remington,* for petitioner.

*Russell D. Chase,* State's Attorney of Stutsman County, and *Charles S. Buck, Jr.,* Assistant State's Attorney, for respondent.

NUESSLE, J. This is an original application for a writ of habeas corpus brought by Ed H. Hager on behalf of Charles A. Vosburg. The facts with respect to the matter may be stated substantially as follows: Vosburg was on the 19th day of September, 1936, convicted of a grand larceny, committed September 3, 1936. The court on such conviction imposed an indeterminate sentence of from three to eight years in the state penitentiary. He was committed under such sentence. Thereafter and on July 29, 1937, the Board of Pardons paroled Vosburg to the petitioner Hager. Pursuant to the terms of this parole Vosburg was released from the penitentiary and into the employ of Hager. This parole has not been in any way revoked or modified.

The respondent Homuth is the sheriff of Stutsman county. After the release of Vosburg from the penitentiary on parole, he was arrested by the respondent Homuth under a warrant issued by a justice of the peace of Stutsman county on a charge of grand larceny alleged to

have been committed on or about September 16, 1936. He waived examination and was bound over to await trial in the district court.

The meeting of the Board of Pardons at which Vosburg was paroled, was duly called and all of the members thereof were present except the Attorney General. The parole was ordered by the unanimous vote of those present.

The petitioner urges in support of his application that under the parole he has charge of and is responsible for the said Vosburg; that under the terms of the parole the said Vosburg is constructively in the custody and under the control of the Board of Pardons and of the warden of the state penitentiary; that such being the case the sheriff of Stutsman county had, in the first instance, no right to arrest and take the said Vosburg into his custody and has no right to his custody under the commitment of the justice of the peace who bound Vosburg over to await trial. On the other hand, the respondent insists that it was his duty and he was empowered to arrest Vosburg on the warrant issued by the justice of the peace, wherever he might be found within the state of North Dakota, and that the said Vosburg having been bound over to await trial and having been committed to the respondent's custody as sheriff, he is entitled and in duty bound to hold the said Vosburg in his custody until the latter shall have furnished bail as provided in the order of the justice of the peace, or is otherwise ordered to be released; that, in any event, the action of the parole board in granting the parole was illegal and void for the reason that Vosburg was committed to the penitentiary to serve an indeterminate sentence of not less than three nor more than eight years and that the minimum period of such sentence had not been served at the time the parole was granted; that all of the members of the Board of Pardons were not present at the time of the granting of the parole and that the same could not be granted except by and with the unanimous consent and approval of the full board of five members.

The first parole statute was enacted in 1891, see chapter 92, Sess. Laws 1891 (§ 11,229, Comp. Laws 1913). Under this statute the Board of Directors of the penitentiary, later the Board of Trustees, was empowered to grant paroles. In 1909, the Board of Experts was created. This board was charged with the duty of passing upon ap-

plications for parole. It consisted of the warden of the penitentiary, the prison physician, the chaplain of the penitentiary, and one other person chosen by the Board of Trustees of the penitentiary. See chapter 175, Sess. Laws 1909 (Comp. Laws 1913, § 10,948). In 1911, the Board of Control was created and the control and management of the state penitentiary and other institutions were confided to it. This board consisted of three members. See chapter 62, Sess. Laws 1911 (Comp. Laws 1913, §§ 236 et seq.). In 1915, § 10,948, supra, was amended to provide that a member of the State Board of Control, chosen and designated by the board, should also be a member of the Board of Experts. See chapter 233, Sess. Laws 1915. At the same session of the legislature, § 11,229 was repealed. See chapter 211, Sess. Laws 1915. In 1923, the Board of Experts was abolished and all powers conferred upon that board by existing provisions of law were vested in the Board of Pardons. See chapter 262, Sess. Laws 1923 (1925 Supp. § 10,948). This statute also provides that: "All applications for the discharge or parole of the inmates of the penitentiary, who may have been sentenced either for a fixed term or under the indeterminate sentence of law, shall be presented to and passed upon by the Board of Pardons and no person serving an indeterminate sentence shall be released from the penitentiary merely because the minimum term of his sentence has expired but his term shall continue until the expiration of the maximum term, unless he is sooner ordered discharged or is paroled from the institution by the Board of Pardons. The Board of Pardons shall determine and fix the date when an inmate may be released or paroled or discharged after the expiration of the minimum term of the sentence. . . . It shall be the duty of the Board of Pardons . . . to formulate rules and regulations governing the conduct of inmates (of the penitentiary), and the manner in which they may become eligible to become applicants for discharge or parole. . . ."

Section 11,231, Comp. Laws 1913, was originally enacted as ¶ 3, chapter 92, Sess. Laws 1891. The original enactment provided that "No prisoner shall be paroled except . . . by the affirmative vote of at least four members of said board of directors." This statute, as amended, may also be found as § 8558, Revised Statutes 1895, and later as § 10,372, Revised Codes of 1905. The provision requiring

that there shall be no parole except by the affirmative vote of at least four members of the Board of Trustees, is in all of these forms of the statute. In 1915, § 11,231 was amended to read:

"No parole shall be granted to any person confined in the Penitentiary unless:

. . . . . . . . . . . . .

"2. The Board of Experts unanimously approve and endorse said recommendation."

See Chapter 189, Sess. Laws 1915 (1925 Supp. § 11,231). It has not been expressly amended since that time.

The Board of Pardons is a constitutional board. See § 76, Constitution of North Dakota, as amended. This section provides that

"The governor shall have power in conjunction with the board of pardons, of which the governor shall be ex officio a member and the other members of which shall consist of the attorney general of the state of North Dakota, the chief justice of the supreme court of the state of North Dakota, and two qualified electors who shall be appointed by the governor, to remit fines and forfeitures, to grant reprieves, commutations and pardons after conviction for all offenses except treason and cases of impeachment; but the legislative assembly may by law regulate the manner in which the remission of fines, pardons, commutations and reprieves may be applied for. . . ."

Section 11,100, Compiled Laws 1913, provides: "Every pardon or commutation of sentence shall be in writing and shall have no force and effect unless the same be granted by unanimous vote of those present of said board convened as such, four of whom shall constitute a quorum; 'Provided that at special meetings, called in case of emergency, the governor, the chief justice of the supreme court and the attorney general may constitute a quorum.' . . ."

This section was amended in 1935 to read: "Every pardon or commutation of sentence shall be in writing and shall have no force and effect unless the same be granted by a vote of four members of said Board, four (members) of such Board shall constitute a quorum. Provided that at any special meeting called in case of an emergency; the Governor, the Chief Justice of the Supreme Court and the Attorney General shall constitute a quorum. . . . Said Board may grant an absolute or conditional pardon, and any conditional pardon shall state

the terms and conditions upon which it is granted. . . ." Sess. Laws 1935, chap. 248.

The respondent's first challenge to the validity of the parole granted to Vosburg is predicated upon the provision of § 11,231, as amended, supra, providing that "No parole shall be granted unless the Board of Experts unanimously approve and endorse the recommendation" of the warden to that effect. His contention is that in the granting of paroles the Board of Pardons has only the powers previously exercised in that respect by the Board of Experts, that only four members of the Board of Pardons were present at the meeting of the board at which the parole in question was granted; that accordingly no valid parole could be granted. We are unable to agree with him in this regard. At the time the provision upon which he relies was enacted, the power to parole under the statute was in the Board of Experts. This board was purely a statutory board. It consisted of appointees of the governor or of the Board of Trustees or of the Board of Control. It is also to be remembered that at that time the statutory provision respecting the granting of pardons required that no pardon should be granted except by the unanimous vote of those members of the board present at the time the action was taken. It is inconceivable that when the legislature amended the statute with respect to the granting of paroles, abolished the Board of Experts and placed the power to parole in the Board of Pardons, they contemplated that this board might grant an absolute or conditional pardon by the vote of those members of the board present (four constituting a quorum at a regular meeting and three ex officio members at a special meeting) at the meeting at which such clemency was extended, but should not have the power to extend the lesser and included clemency of a parole except by the unanimous vote of the members of the full board. When the power to parole was lodged in the Board of Experts there was reason for such a requirement but when the Board of Experts was abolished and the power to parole was placed by statute in the Board of Pardons, that reason no longer existed. We hold then that notwithstanding the provision in § 11,231, as amended, the Board of Pardons has the power at any duly constituted regular or special meeting thereof to grant a parole by the same vote that is required to grant a pardon or a conditional pardon.

But the respondent also challenges the validity of the action of the

Board of Pardons in paroling Vosburg on the ground that pursuant to § 10,948, Supplement, supra, the board has no power to parole a prisoner serving an indeterminate sentence until after the expiration of the minimum term of the sentence; that, in the instant case, the minimum term was fixed, pursuant to § 10,943, Supplement, at three years, and that such minimum term had not expired at the date of the granting of the parole. The particular portion of § 10,948 on which the respondent relies, reads: "The Board of Pardons shall determine and fix the date when an inmate may be *released or paroled or discharged after the expiration of the minimum term of the sentence.*" We are also clear that there is no ground for this contention. Under the statute a release or parole may be ordered and granted regardless of whether the prisoner's sentence is or is not indeterminate, and, as we read the statute, if it be an indeterminate sentence, regardless of whether the minimum term has or has not been served. But a prisoner may not be discharged until he has served the term of his sentence. The statute, § 10,943, 1925 Supplement Comp. Laws 1913, providing for indeterminate sentences, requires that where an indeterminate sentence is imposed the court shall adjudge that the person so sentenced shall be imprisoned for not less than a stated minimum nor more than a stated maximum period, but provides that in all cases the minimum period shall not be less than the minimum term and that the maximum shall not be more than the maximum term provided by law for the offense. So the provision in § 10,948, heretofore referred to, must be considered as separable. The first part, relating to releases and paroles, is applicable generally. The second portion, "or discharged after the expiration of the minimum term of the sentence," has application to indeterminate sentences only. It is intended to empower and require the board to make definite a sentence which theretofore has been indefinite, to fix the limit of the imprisonment where before there has been no limit except the maximum term imposed. (In this connection, see Re Riley, 52 N. D. 471, 203 N. W. 676.) Were there a comma after the word "paroled" in the statute, there could be no question as to its meaning. And considering the purpose and effect of the indeterminate sentence statute, § 10,943, supra, no other construction than that above can be reasonably given the provision in § 10,948 on which the respondent predicates his contention.

We hold then that on the record before us there is no merit to the challenges interposed to the validity of the parole granted to Vosburg.

There remain then the questions as to the effect of a parole and as to whether while the prisoner is at large under it, he is subject to arrest and detention for an offense committed prior to the conviction under which he was sentenced and thereafter paroled.

Of course a prison is not a place of refuge and sanctuary. Rigor v. State, 101 Md. 465, 61 A. 631, 4 Ann. Cas. 719; Ponzi v. Fessenden, 258 U. S. 254, 66 L. ed. 607, 42 S. Ct. 309, 22 A.L.R. 879. The fact that a convicted prisoner is sentenced to imprisonment and is confined under such sentence does not mean that he shall go "unwhipped of justice" for any other offense that may have been committed prior to his conviction and imprisonment. It does not absolve him from trial, and punishment if convicted. Rigor v. State, 101 Md. 465, 61 A. 631, 4 Ann. Cas. 719, supra; Re Tramner, 35 Nev. 56, 126 P. 337, 41 L.R.A.(N.S.) 1095; State v. Keefe, 17 Wyo. 227, 98 P. 122, 22 L.R.A.(N.S.) 896, 17 Ann. Cas. 161; McCarty v. United States Dist. Ct. (C. C. A. 8th) 19 F. (2d) 462. But when he is sentenced and committed for an offense he is in the custody of the authorities provided by the state. Flagg v. State, 11 Ga. App. 37, 74 S. E. 562; Ponzi v. Fessenden, 258 U. S. 254, 66 L. ed. 607, 42 S. Ct. 309, 22 A.L.R. 879, supra; 13 C. J. 920. And when the properly constituted authorities parole such a prisoner he remains, constructively at least, in the custody of that agency to which he was committed by the court imposing the sentence. Re Heckman, 90 Cal. App. 700, 266 P. 585; Re Sanders, 47 Cal. App. 368, 190 P. 647; People v. Whitcomb, 118 Misc. 615, 194 N. Y. S. 209; Ruffin v. Com. 21 Gratt. (Va.) 790. The statute, § 11,233, Comp. Laws 1913, recognizes that fact and provides that: "Any person when on parol from the penitentiary shall be deemed to be in custody and under the control of the Board of Trustees and subject at any time until the expiration of the term for which he was sentenced to be taken into actual custody and returned to the penitentiary. . . ."

The individual to whom a prisoner is thus paroled is responsible for him according to the rules and regulations imposed by the paroling authorities. He is the agent of the executive department of the government to whose custody the prisoner has been committed. The pris-

oner can no more be forcibly taken from this custody than he can be forcibly taken from the penitentiary over the protest of the penitentiary authorities. Nor, as we have shown above, does this mean he shall be unpunished for his other crimes. Orderly government demands that if his attendance be desired elsewhere temporarily it shall be procured in a proper and lawful manner. Principles of comity require that the judicial department respect the rights and powers of a co-ordinate department of the government, and that the courts have due regard for the orders of other courts of co-ordinate jurisdiction. The courts are not without power to procure the attendance of convicted prisoners, either as witnesses or as defendants. This may be done through habeas corpus, see § 11,399, Comp. Laws 1913, or by some other proper order. People v. Whitcomb, 118 Misc. 615, 194 N. Y. S. 209; Rigor v. State, 101 Md. 465, 61 A. 631, 4 Ann. Cas. 719; and Flagg v. State, 11 Ga. App. 37, 74 S. E. 562, supra. It follows that in the instant case the petitioner Hager, as the sponsor of Vosburg under the parole granted by the Board of Pardons, is entitled to his custody as against the respondent Homuth who detains him under a commitment from a justice of the peace.

Writ granted.

BURR and MORRIS, JJ., concur.

CHRISTIANSON, Ch. J., and SATHRE, J., being disqualified did not participate.