STATE of North Dakota,
Plaintiff/Appellee,

v.

Ronald BRODELL, Defendant/Appellant.

Crim. No. 478.

Supreme Court of North Dakota.

June 4, 1974.

Rehearing Denied Aug. 26, 1974.

Dennis A. Schneider, Asst. State's Atty., Bismarck, for plaintiff/appellee.

Vance K. Hill, Bismarck, for defendant/appellant.

TEIGEN, Judge.

The defendant Brodell has appealed from two final judgments of conviction entered on the same date, one for escape from prison and the other for assault and battery.

Brodell, while serving a term in the North Dakota State Penitentiary for escape from prison, made a second escape on June 24, 1973. In the process of effecting the escape he committed an assault upon one of the penitentiary guards. He was recaptured four days later and returned to the penitentiary where he was placed in the maximum security section.

On July 9, 1973, a criminal complaint was issued charging Brodell with two counts: (1) escape from prison, and (2) assault with a dangerous weapon without the intent to kill. The Public Defender was assigned to defend him. When Brodell appeared before the magistrate on July 26, 1973, for his preliminary hearing he objected to being represented by the Public Defender and private counsel was appointed. After the appointment of private counsel the preliminary hearing was rescheduled for August 29, 1973, at which time Brodell was bound over to the district court. Brodell was arraigned in the dis-

trict court on September 7, 1973, and entered a plea of not guilty to both charges. Trial was postponed because Brodell's counsel advised the court that he wished to file a motion for dismissal. Motion for dismissal, together with briefs in support thereof, was received by the court on or about September 13, 1973, and the State responded with its brief in opposition about October 1, 1973. The trial court denied the motion to dismiss by memorandum opinion dated October 5, 1973, and by a formal order dated October 9, 1973.

Brodell filed a notice of appeal from the order denying his motion to dismiss on October 18, 1973, and on November 6, 1973, this court entered an order dismissing the appeal, based on a stipulation of the parties for dismissal.

Trial was scheduled for November 7, 1973. The new Rules of Criminal Procedure promulgated by this court became effective on November 1, 1973, and, on that date, counsel for Brodell renewed the motion to dismiss, premising said motion on the new Rules of Criminal Procedure. The trial court denied the motion and trial was held on that date. The jury returned a verdict of guilty on the first count of escape from prison, and a verdict of guilty on the second count of a lesser and includable offense of assault and battery.

On December 3, 1973, Brodell was sentenced by the trial court to a term of four years for escape from prison, to commence upon the expiration of his sentence presently being served, and gave credit on the new sentence of 135 days, being the time from apprehension to the date of sentencing. It sentenced Brodell on the assault and battery conviction to a term of six months to run concurrently with the sentence on the charge of escape from prison.

Brodell has appealed from both criminal judgments, raising four issues: (1) that he was deprived of liberty without due process of law; (2) that he was denied the

right of a speedy trial; (3) that he was denied the assistance of counsel; and (4) that he was subjected to cruel and unusual punishment.

Brodell's claim to error for violation of procedural statutes and constitutional rights is based on the contention that the arrest occurred on June 28, 1973, the day Brodell was recaptured by the authorities, and on the fact that, following Brodell's recapture, he was placed in the maximum security section of the penitentiary (which he terms as solitary confinement) for a period of approximately four and one-half months, during the first fifteen or twenty days of which he was not allowed telephone privileges.

The record discloses that on June 24, 1973, ten inmates escaped from the North Dakota State Penitentiary in a mass escape. All of them were recaptured within a few days and all were placed in maximum security. Maximum security is described as being used for the protection of the institution, the individual, the officers and other inmates. It is not a disciplinary action and certain privileges are afforded the inmates in maximum security. They are provided recreation periods, television, reading materials, mail privileges, and visiting privileges. They also may communicate verbally with other prisoners in the section. During the first fifteen or twenty days they normally are not allowed telephone privileges. Placement of a prisoner in the maximum security section is an administrative decision made when it is felt that an inmate becomes a threat to the peace and tranquility of the institution or a threat to himself or the officers. Brodell was described as being agitated and upset following his recapture and, when he became more relaxed and in control of himself, he was released from maximum security and placed in another section of the penitentiary and given employment in the license tag plant. It appears that Mr. Brodell's treatment was no different from the treatment given other persons charged with causing a disturbance in the penitentiary or having effected an escape.

The warden of the penitentiary has charge, custody and control of the penitentiary and the persons committed thereto. He shall superintend and be responsible for the policing of the penitentiary and for the discipline of the inmates. Sections 12–47–11 and 12–47–18, N.D.C.C. With approval of the Director of Institutions, he may adopt any measures he may deem proper to aid in the detection and capture of persons escaping from the penitentiary, and when an inmate escapes "the warden shall use every means at his command for the apprehension of such person * * *" Section 12–47–34, N.D.C.C.

The warden is required to employ all necessary means to maintain order in the penitentiary, enforce obedience, suppress insurrections, and effectually prevent escapes and, for these purposes, he may command, at all times, the aid of the officers of the penitentiary and of the citizens outside the premises thereof. Section 12–47–23, N.D.C.C.

Under the statutes referred to above, the warden was empowered to effect the recapture of Brodell and return him to the penitentiary for the purpose of retaining him in custody until the expiration of the term he was serving. This is also the general law. See 27 Am.Jur.2d Escape, Prison Breaking, and Rescue, § 26. It provides:

"It is the duty of the custodian of a prisoner to maintain him in custody, and if the prisoner escapes, the custodian must ordinarily use every lawful means to recapture and return him to prison."

The recapture of Brodell after his escape was not an arrest for the crime of escape, as maintained by his counsel, but was a recapture under the direction of the warden in whose custody he had been com-

mitted after conviction and sentence of the prior crime of escape. Subsequently, he was charged with the crime of escape, as defined in Section 12–16–05, N.D.C.C., in effect prior to July 1, 1973, which provided, in part:

"Any person confined in any prison upon * * * commitment * * * for a felony who shall escape from or break said prison with intent to escape therefrom, * * * shall be guilty of a felony, and if such escape or attempted escape shall be made from a penitentiary, he shall be subject to imprisonment therein for a term not more than double the term for which he originally was sentenced, to commence upon the expiration of his former sentence."

A person under sentence who escapes from prison may be recaptured and imprisoned for a term equal to that portion of his original term of imprisonment which remained unexpired on the day of his escape, and any additional imprisonment to which such prisoner shall be subjected for the crime of escape shall commence to run at the termination of his original sentence. Section 12–16–09, N.D.C.C.

■ Thus, under our statutory scheme, the warden was empowered to effect the recapture of Brodell after his escape and to return him to the penitentiary to serve the remaining portion of the sentence he was serving when he effected the escape and, having the charge, custody and control of the inmates therein and the duty to superintend and be responsible for the policing of the penitentiary and the discipline of the inmates, he was empowered, for the reasons stated, to place Brodell in maximum security for the purposes hereinbefore set forth.

While in the charge, custody and control of the warden, Brodell could not be taken forcibly from the penitentiary, over the warden's protest, to appear before a magistrate on another charge. Hager v. Homuth, 68 N.D. 84, 276 N.W. 668 (1937). But, as stated in the above case, this does not mean that he should not be punished for his other crime. Orderly government demands that if the inmate's attendance is desired elsewhere temporarily, it should be procured in a proper and lawful manner, and the principles of comity require that the judicial department respect the rights and powers of a coordinate department of government.

■ Brodell may not be said to have been taken into custody upon the two charges with which we are concerned here until he was taken from the penitentiary, with the approval of the warden, and brought before the court for a preliminary hearing on July 26, 1973.

From that time on proceedings progressed speedily and regularly, during which Brodell, at all times, was represented by counsel. Delay, if any, was caused only by motions made by Brodell through his counsel, which delay was not excessive but was within normal and reasonable time limitations.

We find that Brodell was not deprived of liberty without due process of law; that he was not deprived of a speedy trial or the assistance of counsel; and that he was not subjected to cruel and unusual punishment. All of the issues raised by Brodell on this appeal are directed to the actions of the warden in performing his duties, required of him by statute, and, in our judgment, have no bearing upon prosecution for the two offenses charged in the information.

For the reasons aforesaid, the judgments from which these appeals are taken are affirmed.

ERICKSTAD, C. J., and VOGEL, PAULSON and KNUDSON, JJ., concur.