**ROBIN v. ELY & WALKER DRY GOODS CO.**

**No. 8874.**

Court of Civil Appeals of Texas. Austin.

Jan. 31, 1940.

Rehearing Denied Feb. 28, 1940.

Collins, Jackson & Snodgrass, of San Angelo, for appellant.

Robert T. Neill, of San Angelo, for appellee.

BLAIR, Justice.

Appellee, Ely & Walker Dry Goods Company, a Missouri corporation, sued appellant, Max Robin, upon a sworn account for $6,169.12, with legal interest from September 22, 1935, being the balance due on goods, wares and merchandise sold him during the months of June, July and August, 1935. Appellant plead the two year statute of limitation (Art. 5526), in bar of the cause of action. Appellee replied that appellant was without the limits of the state from about October 25, 1936, to about June 25, 1937, during which time the statute of limitation did not run under the terms of Art. 5537, which reads as follows: "If any person against whom there shall be cause of action shall be without the limits of this State at the time of the accruing of such action, or at any time during which the same might have been maintained, the person entitled to such action shall be at liberty to bring the same against such person after his return to the State and the time of such person's absence shall not be accounted or taken as a part of the time limited by any provision of this title."

Appellant replied that it is true that he was without the limits of the State between said dates, but that said fact did not toll the running of the statute of limitation, because his absence was wholly involuntary and was due to the fact that he had been convicted of violating the United States penal laws relating to the concealment of property by a bankrupt, and as punishment was sentenced to serve one year and one day in the federal prison at El Reno, Oklahoma; and that the federal marshal under a proper commitment bodily transferred him from Texas to El Reno, Oklahoma, without his consent and in pursuance of the sentence of the federal court. Appellant alleged that the judge trying and convicting him could have sentenced him to serve said sentence within the limits of the State of Texas, and that to deny him the benefit of the laws of limitation because of the aforesaid facts would violate both the Texas and the United States constitutions, in that it deprives him of equal protection of the laws; forces penalties upon him not provided for either by the laws of Texas or of the United States; deprives him of his property without due process of law; inflicts upon him cruel, inhuman, and unusual punishment; subjects him to penalties and punishment not uniformly followed as the result of his conviction, but resulting from the action of the judge in designating the particular penal institution in which he was to serve his sentence, which action of the judge was in no manner connected with the severity of the punishment and did not anticipate nor contemplate any loss of civil rights of appellant which did not necessarily follow from the sentence imposed; and that denial of the right of appellant to plead limitation under the particular facts results in a violation of his constitutional rights aforementioned, and particularly Sec. 20 of Art. 1 of the Constitution of Texas, Vernon's Ann.St., which provides that: "No citizen shall be outlawed, nor shall any person be transported out of the State for any offence committed within the same."

These contentions were overruled by the trial judge, and judgment was rendered for appellee as prayed; hence this appeal, in which appellant presents one proposition, as follows: "Since the absence of appellant from the State of Texas was not a voluntary absence, and since such absence resulted from his being forcibly transported without the State and confined in a penal institution of the United States Government during the period of his absence, and since such transportation to and incarceration in a penal institution in the

State of Oklahoma (as distinguished from a penal institution within the limits of the State of Texas) in fact constituted no part of his sentence for crime, and since the decision of the sentencing judge to confine him in an institution located in Oklahoma rather than in one located in Texas, was not to any extent a determination of the degree of punishment he should suffer and was made wholly without regard to any effect the place of confinement possibly may have had upon any of his civil rights, it was error for the lower court to hold that the statutes of limitations did not continue to run during the time he was confined at El Reno."

The question presented is novel. Neither party has cited any authority directly in point, and we have found none which would sustain the contention of appellant. Stripped down his contention seems to be that although he was legally convicted in a federal court for an offense in violation of the federal laws, and legally imprisoned in another state, the federal court trying him did so "wholly without regard to any effect the place of confinement possibly may have upon any of his civil rights" as a citizen of Texas; and in consequence his absence from the State was involuntary, and he could not thus be deprived of such rights, and that to do so would deprive him of the protection of the aforementioned provisions of the state and federal constitutions.

Manifestly, the federal court trying appellant for an offense against the federal laws did not have to take into consideration the provision of the Texas limitation statute which provides that absence from the State shall not be computed in determining the period or time of the running of the limitation statute, in connection with the place of his confinement in a federal prison in another state than the one in which the crime was committed. The jurisdiction of the two sovereignties is separate and distinct, and the State could not control the United States in the enforcement of its penal laws, because its jurisdiction is supreme in such matters, and its laws specifically provide for the trial of offenders against the bankruptcy laws, and for their imprisonment at any place which the federal court and the United States Attorney General may designate. Clause 2, Art. 6, United States Constitution; Charles Ponzi v. Franklin G. Fessenden, Master of House of Correction,

258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879; Sec. 8, Sub.Sec. 4, Art. 1, United States Constitution; and Art. 753f, Title 18, Criminal Code United States Code Annotated. In this connection, it may be observed that appellant states that the federal court trying him could have sentenced him to serve his time in prison within this State. We do not here undertake to determine the question of whether one convicted of a crime for a federal offense in a federal court may have the right to have the court determine the place of his imprisonment with respect to his civil rights as a citizen of the State in or from which he was convicted, or may have committed the crime; but if such question were presented to the federal court trying him, it would be one which would in all probability address itself to the sound discretion of the court and officials charged with the duty of designating the place of confinement. If appellant had such right and did not invoke it at the time of his trial, he certainly cannot now assert in this case that he has been involuntarily taken without the limits of this State in violation of any of his rights either under the Texas laws or the laws of the United States.

Moreover, appellant by his own conduct violated the laws of his government and in consequence was legally convicted and imprisoned in another state, and we find no law whereby he can assert that he had been involuntarily taken without the limits of his state. He voluntarily and deliberately brought about his own absence from the State by violating the laws of his nation, and he is certainly not in a position to assert that his absence was involuntary. A more equitable and moral claim of involuntary absence as not tolling a statute of limitation was denied in the case of Fitch and Henderson v. Boyer, 51 Tex. 336. The suit was one in trespass to try title brought by Boyer. Fitch urged the defense of limitation, but the necessary time of possession had been broken by his absence. He contended that he had been driven from the land by hostile Indians; that at the time he left the premises he intended to return; and that he did return as soon as it was safe for him to do so. Thus he sought to invoke the time of his involuntary absence as not interrupting the running of the statute of limitation. The court held that his absence availed him nothing. Manifestly appellant is not in as good a position as Fitch was, because he

voluntarily committed a crime and was legally convicted and imprisoned in another state.

■ The Texas constitutional provision that "no citizen shall be outlawed, nor shall any person be transported out of the State for any offence committed within the [State]," has reference only to an offense against the constitution or laws of this State. This provision of the Texas constitution could not control the government of the United States in the enforcement of its penal laws, because as above pointed out, its laws and jurisdiction under the provisions of Clause 2, Art. 6 of the United States constitution are superior to the laws of this State with respect to the matter of bankruptcy laws. We see no possible relation of this provision of the Texas constitution to the question here presented, which merely involves and is controlled by the proper interpretation of Art. 5537, above quoted, to determine when a debtor is absent from or "without the limits of this State" so as to toll the running of the statute of limitation during his absence. It is manifest that the statute was enacted primarily for the benefit of the creditor and not the debtor. The saving of the statute is only as to the case of a defendant who is without the limits of the State, and it contains no saving in favor of the plaintiff who is without the limits of the State. Maverick v. Salinas, 15 Tex. 57. The statute is plain and unambiguous, and has no saving clause as to any sort or character of absence of the defendant which would toll the running of the statute of limitation as to him during his absence from the State; and the courts are not authorized to read into the statute any sort or character of absence of the defendant as would not toll the running of the statute during his absence from the State. It has been repeatedly held that absence of a debtor from the State through business or pleasure will toll the statute of limitation during his absence in behalf of the creditor, and that "the object, policy, and meaning of the provision under consideration are, that to render the bar effectual the debtor must remain in the state for the full period of time described by law." 28 Tex.Jur. 233, § 134; Watkins v. Junker, Tex.Sup., 19 S.W. 390; Fisher v. Phelps, Dodge & Co., 21 Tex. 551; Koethe v. Huggins, Tex.Civ.App., 271 S.W. 143. The legislature did not see fit to provide in this statute that a debtor who has violated the laws of the federal government and in consequence has been legally convicted and imprisoned in another state would be entitled to have the statute of limitation continue to run against his debts during his confinement in prison in another state. No doubt, the legislature would not enact such a statute in behalf of one who does not merit such consideration. The statutory right to plead lapse of time instead of payment of debt is merely a statutory right or privilege which the debtor may avail himself of or not as he pleases; and certainly a debtor seeking to avail himself of this statutory right must show that his asserted right is within the scope of the specific language of the statute. It has been held by our courts since the earliest time that as little latitude should be left in a limitation statute as is possible to construction; and that "exceptions which are to be made to the operation of the statute, should be specified and defined by the legislative will, and not entrusted to the uncertain powers of construction." DeCordova v. City of Galveston, 4 Tex. 470.

The judgment of the trial court will be affirmed.

Affirmed.