PONZI *v.* FESSENDEN ET AL.

ON CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 631. Argued March 8, 9, 1922.—Decided March 27, 1922.

1. Our system of state and federal jurisdiction requires a spirit of reciprocal comity between courts to promote due and orderly procedure. P. 259.
2. The fact that a man is serving a sentence of imprisonment imposed by a federal court for a federal offense, does not render him immune to prosecution in a state court for offenses committed against the State. P. 264.
3. A federal prisoner may, with the consent of the United States, be brought before a state court, for trial on indictment there, by a writ of *habeas corpus* issued by that court and directed to the warden having him in charge as federal agent, then to be returned and serve out the federal sentence. P. 261.

4. The Attorney General, in view of his statutory functions, has implied power to exercise the comity of the United States in such cases, provided enforcement of the sentence of the federal court be not prevented or the prisoner endangered.  P. 262.

5. Upon trial and conviction of one already sentenced for another crime, execution of the second sentence may begin when the first terminates.  P. 265.

THIS case comes here for answer to the following question of law:

" May a prisoner, with the consent of the Attorney General, while serving a sentence imposed by a District Court of the United States, be lawfully taken on a writ of habeas corpus, directed to the master of the House of Correction, who, as Federal agent under a mittimus issued out of said District Court, has custody of such prisoner, into a state court, in the custody of said master and there put to trial upon indictments there pending against him?"

September 11, 1920, twenty-two indictments were returned against Charles Ponzi in the Superior Court for Suffolk County, Massachusetts, charging him with certain larcenies.

October 1, 1920, two indictments charging violation of § 215 of the Federal Penal. Code were returned against him in the United States District Court for the District of Massachusetts.  November 30, 1920, he pleaded guilty to the first count of one of these, and was sentenced to imprisonment for five years in the House of Correction at Plymouth, Massachusetts, and committed.

April 21, 1921, the Superior Court issued a writ of habeas corpus directing the master of the House of Correction, who, as federal agent, had custody of Ponzi by virtue of the mittimus issued by the District Court, to bring him before the Superior Court and to have him there from day to day thereafter for trial upon the pending indictments, but to hold the prisoner at all times in his custody as an agent of the United States subject to the sentence imposed by the Federal District Court.  Blake,

the master of the House of Correction, made a return that he held Ponzi pursuant to process of the United States and prayed that the writ be dismissed.

Thereafter the Assistant Attorney General of the United States, by direction of the United States Attorney General, stated in open court that the United States had no objection to the issuance of the writ, to the compliance with the writ by Blake, or to the production of Ponzi for trial in the Superior Court and that the Attorney General had directed Blake to comply with the writ. Blake then produced the prisoner, who was arraigned on the state indictments and stood mute. A plea of not guilty was entered for him by the court.

May 23, 1921, Ponzi filed in the District Court a petition for a writ of habeas corpus directed against the Justice of the Superior Court, and against Blake, alleging in substance that he was within the exclusive control of the United States, and that the state court had no jurisdiction to try him while thus in federal custody. His petition for writ of habeas corpus was denied. An appeal was taken to the Circuit Court of Appeals, the judges of which certify the question to this court on the foregoing facts. § 239, Judicial Code.

*Mr. William H. Lewis* for Ponzi.

If the petitioner could not be tried in the state court, pending his sentence, without the consent of the Attorney General of the United States, he could not be tried at all.

The Attorney General of the United States is a statutory officer, and has no authority over prisoners of the United States except such as is expressly given him by some statute of the United States, or as may be necessarily implied from some express statute.

He has no control over a prisoner in a state jail or penitentiary. Rev. Stats., § 5539.

A federal prisoner is entitled to protection. *Beavers* v. *Henkel,* 194 U. S. 83; *Logan* v. *United States,* 144 U. S. 295.

The Attorney General has neither express nor implied authority to intervene in a *habeas corpus* case of this character.

If the situation were reversed, and Ponzi had been first tried in the state court and sentenced to serve a term in a state jail or prison, and the United States desired to try him upon indictments pending against him in the United States District Court, neither the court, nor any judge thereof, could issue a writ of *habeas corpus* to bring him into that court for trial. Rev. Stats., § 753; *Ex parte Burrus,* 136 U. S. 586; *Re Dorr,* 3 How. 103; *Ex parte Bollman,* 4 Cranch, 75.

It would seem, therefore, that the United States ought not to permit a state court to try a prisoner of the United States where, under the same circumstances, a United States court could not try a state prisoner. There is no comity in it.

In all the judicial history of the Commonwealth, from *Sims's Case,* (1851) 61 Mass. 285, down to the present, Massachusetts has never attempted to assert the right which is now being asserted in this case.

The proceeding of the state court is practically forbidden by the laws of the Commonwealth upon the subject of *habeas corpus.* Gen. Laws, c. 248, § 34.

This writ was used in the English law to bring in prisoners from one court to another in the same jurisdiction. That was the use of the writ in the *Bollman Case, supra.* It is used here as a substitute for removal, or an extradition proceeding. Obviously, this writ could not be used to take a prisoner from one State to another, from one jurisdiction to another jurisdiction. The jurisdiction of the United States, where Ponzi is, is just as foreign to Massachusetts as Rhode Island is to Georgia, and the writ

of the Massachusetts court can not cross the line between the two jurisdictions.

The mittimus itself forbids interference with the body of Ponzi by the state court.    It is fundamental that, after the term of the court has expired at which sentence was rendered, the court itself cannot interfere with its own mittimus.  *In re Jennings,* 118 Fed. 479; *Commonwealth v. Foster,* 122 Mass. 317; *Goddard v. Ordway,* 101 U. S. 752; *Basset v. United States,* 9 Wall. 38; *Ex parte Lange,* 18 Wall. 167.

In all cases of concurrent jurisdiction or otherwise, the court that first acquires jurisdiction holds it to the exclusion of all others, until its judgment is satisfied.   *Mc-Cauley v. McCauley,* 202 Fed. 280, 284; *State v. Chinault,* 55 Kans. 326; *Ex parte Earley,* 3 Oh. Dec. 105; *Commonwealth v. Fuller,* 8 Metc. 318; *Hill Mfg. Co. v. Providence & New York S. S. Co.,* 113 Mass. 495; *Ayers v. Farwell,* 196 Mass. 350; *Wayman v. Southard,* 10 Wheat. 1; *Covell v. Heyman,* 111 U. S. 176; *Taylor v. Taintor,* 16 Wall. 366; *Felts v. Murphy,* 201 U. S. 123; *Harkrader v. Wadley,* 172 U. S. 163; *In re Johnson,* 167 U. S. 120; *Opinion of the Justices,* 201 Mass. 609.

Can the state court try Ponzi without jurisdiction over his person; in other words, without custody of the prisoner?   Ponzi, as a prisoner of the United States, is "within the dominion and exclusive jurisdiction" of the United States.   *Ableman v. Booth,* 21 How. 506.   See also *Robb v. Connoly,* 111 U. S. 624; *In re Johnson,* 167 U. S. 120; *Logan v. United States,* 144 U. S. 263; Willoughby, Const., c. 9, § 72; Bailey, Habeas Corpus, p. 68; 6 Ops. Atty. Gen. 103; 12 *id.* 258.

Upon the principles of natural justice, the state court should not be permitted to try Ponzi under the circumstances, because he would be subject to double punishment for the same acts.

Is it the "due process of law" to which the petitioner is entitled under § 1 of the Fourteenth Amendment to

be set to trial in a state court while serving sentence as a federal prisoner? *Twining* v. *New Jersey,* 211 U. S. 103; *Frank* v. *Mangum,* 237 U. S. 348; *Pennoyer* v. *Neff,* 95 U. S. 714, 733; *Scott* v. *McNeal,* 154 U. S. 34; *Old Wayne Mutual Life Association* v. *McDonough,* 204 U. S. 8.

The contention is that the court, being without custody of Ponzi's body, cannot try him in a criminal case. Const. Mass. Art. XXVI; Gen. Laws Mass., c. 276, § 42.

The principle contended for by the respondents is a dangerous one, in that it will lead to confusion, frequent clashes, and conflicts of jurisdiction, where now none exists.

*Mr. J. Weston Allen,* Attorney General of the State of Massachusetts, with whom *Mr. Edwin H. Abbot, Jr.,* was on the brief, for Fessenden et al.

*Mr. Solicitor General Beck* and *Mr. W. Marvin Smith,* by leave of court, filed a brief on behalf of the United States, as *amici curiae.*

MR. CHIEF JUSTICE TAFT, after stating the case as above, delivered the opinion of the court.

We live in the jurisdiction of two sovereignties, each having its own system of courts to declare and enforce its laws in common territory. It would be impossible for such courts to fulfil their respective functions without embarrassing conflict unless rules were adopted by them to avoid it. The people for whose benefit these two systems are maintained are deeply interested that each system shall be effective and unhindered in its vindication of its laws. The situation requires, therefore, not only definite rules fixing the powers of the courts in cases of jurisdiction over the same persons and things in actual litigation, but also a spirit of reciprocal comity and mutual assistance to promote due and orderly procedure.

9544°—23——20

One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that. He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. *In re Andrews,* 236 Fed. 300; *United States* v. *Marrin,* 227 Fed. 314. Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it.

One accused of crime, of course, can not be in two places at the same time. He is entitled to be present at every stage of the trial of himself in each jurisdiction with full opportunity for defense. *Frank* v. *Mangum,* 237 U. S. 309, 341; *Lewis* v. *United States,* 146 U. S. 370. If that is accorded him, he can not complain. The fact that he may have committed two crimes gives him no immunity from prosecution of either.

The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose. The principle is stated by Mr. Justice Matthews in *Covell* v. *Heyman,* 111 U. S. 176, as follows:

" The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility

which comes from concord; but between State courts and those of the United States, it is something more. It is a principle of right and of law, and therefore, of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty."

The *Heyman Case* concerned property, but the same principle applies to jurisdiction over persons as is shown by the great judgment of Chief Justice Taney in *Ableman* v. *Booth,* 21 How. 506, quoted from, and relied upon, in *Covell* v. *Heyman.*

In the case at bar, the Federal District Court first took custody of Ponzi. He pleaded guilty, was sentenced to imprisonment and was detained under United States authority to suffer the punishment imposed. Until the end of his term and his discharge, no state court could assume control of his body without the consent of the United States. Under statutes permitting it, he might have been taken under the writ of habeas corpus to give evidence in a federal court, or to be tried there if in the same district, § 753, Rev. Stats., or be removed by order of a federal court to be tried in another district, § 1014, Rev. Stats., without violating the order of commitment made by the sentencing court. *Ex parte Bollman,* 4 Cranch, 75, 98; *Ex parte Lamar,* 274 Fed. 160, 164. This is with the authority of the same sovereign which committed him.

There is no express authority authorizing the transfer of a federal prisoner to a state court for such purposes.

Yet we have no doubt that it exists and is to be exercised with the consent of the Attorney General. In that officer, the power and discretion to practice the comity in such matters between the federal and state courts is vested. The Attorney General is the head of the Department of Justice. Rev. Stats., § 346. He is the hand of the President in taking care that the laws of the United States in protection of the interests of the United States in legal proceedings and in the prosecution of offences, be faithfully executed. *United States* v. *San Jacinto Tin Co.,* 125 U. S. 273; *In re Neagle,* 135 U. S. 1; *Kern River Co.* v. *United States,* 257 U. S. 147; Rev. Stats., § 359; Act of June 30, 1906, c. 3935, 34 Stat. 816; Rev. Stats., §§ 360, 361, 357, 364. By § 367, Rev. Stats., the Attorney General is authorized to send the Solicitor General or any officer of the Department of Justice " to any State or District in the United States to attend to the interests of the United States in any suit pending in any of the courts of the United States, or in the courts of any State, or to attend to any other interest of the United States."

The prisons of the United States and the custody of prisoners under sentence are generally under the supervision and regulation of the Attorney General. Act March 3, 1891, c. 529, 26 Stat. 839. He is to approve the expenses of the transportation of United States prisoners by the marshals under his supervision to the wardens of the prisons where they are to be confined, 26 Stat. 839. He makes contracts with managers of state prisons for the custody of United States prisoners. Rev. Stats., § 5548. He designates such prisons. Rev. Stats., § 5546, amended 19 Stat. 88, and 31 Stat. 1450. Release of United States prisoners on parole whether confined in federal prisons or in state prisons is not made save with the approval of the Attorney General. Act of June 25, 1910, c. 387, 36 Stat. 819. The Attorney General is authorized to change the place of imprisonment of United

States prisoners confined in a state prison when he thinks it not sufficient to secure their custody, or on their application, because of unhealthy surroundings or improper treatment. Rev. Stats., § 5546, as amended 19 Stat. 88, and 31 Stat. 1450. One important duty the Attorney General has to perform is the examination of all applications for pardon or commutation, and a report and recommendation to the President.

This recital of the duties of the Attorney General leaves no doubt that one of the interests of the United States which he has authority and discretion to attend to, through one of his subordinates, in a state court, under § 367, Rev. Stats., is that which relates to the safety and custody of United States prisoners in confinement under sentence of federal courts. In such matters he represents the United States and may on its part practice the comity which the harmonious and effective operation of both systems of courts requires, provided it does not prevent enforcement of the sentence of the federal courts or endanger the prisoner. *Logan* v. *United States*, 144 U. S. 263.

Counsel for appellant relies on § 5539, Rev. Stats., which directs that when any criminal sentenced by a federal court is imprisoned in the jail or penitentiary of any State or Territory " such criminal shall in all respects be subject to the same discipline and treatment as convicts sentenced by the courts of the State or Territory in which such jail or penitentiary is situated; and while so confined therein shall be exclusively under the control of the officers having charge of the same, under the laws of such State or Territory." This section it is said prevents the Attorney General or any other federal officer from ordering the superintendent of a state prison to produce a federal prisoner for trial or testimony. But it is clear that the section has no such effect. The section is only one of many showing the spirit of comity between

the state and national governments in reference to the enforcement of the laws of each. To save expense and travel, the Federal Government has found it convenient with the consent of the respective States to use state prisons in which to confine many of its prisoners, and the Attorney General is the agent of the Government to make the necessary contracts to carry this out. In order to render the duty thus assumed by the state governments as free from complication as possible, the actual authority over, and the discipline of, the federal prisoners while in the state prison are put in the state prison authorities. If the treatment or discipline is not satisfactory, the Attorney General can transfer them to another prison, but while they are there, they must be as amenable to the rules of the prison as are the state prisoners. But this does not have application to the procedure or the authority by which their custody may be permanently ended or temporarily suspended.

The authorities, except when special statutes make an exception, are all agreed that the fact that a defendant in an indictment is in prison serving a sentence for another crime gives him no immunity from the second prosecution. One of the best considered judgments on the subject is *Rigor* v. *State,* 101 Md. 465. The Supreme Court of Maryland said (p. 471):

" The penitentiary is not a place of sanctuary; and an incarcerated convict ought not to enjoy an immunity from trial merely because he is undergoing punishment on some earlier judgment of guilt."

Delay in the trial of accused persons greatly aids the guilty to escape because witnesses disappear, their memory becomes less accurate and time lessens the vigor of officials charged with the duty of prosecution. If a plea of guilty and imprisonment for one offence is to postpone trial on many others, it furnishes the criminal an opportunity to avoid the full expiation of his crimes. These

considerations have led most courts to take the same view as that expressed in the case just cited. Other cases are *State* v. *Wilson,* 38 Conn. 126; *Thomas* v. *People,* 67 N. Y. 218, 225; *Peri* v. *People,* 65 Ill. 17; *Commonwealth* v. *Ramunno,* 219 Pa. St. 204; *Kennedy* v. *Howard,* 74 Ind. 87; *Singleton* v. *State,* 71 Miss. 782; *Huffaker* v. *Commonwealth,* 124 Ky. 115; *Clifford* v. *Dryden,* 31 Wash. 545; *People* v. *Flynn,* 7 Utah, 378; *Ex parte Ryan,* 10 Nev. 261; *State* v. *Keefe,* 17 Wyo. 227, 252; *Re Wetton,* 1 Crompt. & J. 459; *Regina* v. *Day,* 3 F. & F. 526.

It is objected that many of these cases relate to crimes committed in prison during service of a sentence. The Maryland case did not, nor did some of the others. But the difference suggested is not one in principle. If incarceration is a reason for not trying a prisoner, it applies whenever and wherever the crime is committed. The unsoundness of the view is merely more apparent when a prisoner murders his warden, than when he is brought before the court for a crime committed before his imprisonment. It is the *reductio ad absurdum* of the plea.

Nor, if that be here important, is there any difficulty in respect to the execution of a second sentence. It can be made to commence when the first terminates. *Kite* v. *Commonwealth,* 11 Metc. 581, 585, an opinion by Chief Justice Shaw; *Ex parte Ryan,* 10 Nev. 261, 264; *Thomas* v. *People,* 67 N. Y. 218, 226.

But it is argued that when the prisoner is produced in the Superior Court, he is still in the custody and jurisdiction of the United States, and that the state court can not try one not within its jurisdiction. This is a refinement which if entertained would merely obstruct justice. The prisoner when produced in the Superior Court in compliance with its writ is personally present. He has full opportunity to make his defense exactly as if he were brought before the court by its own officer. *State* v.

*Wilson,* 38 Conn. 126, 136. The trial court is given all the jurisdiction needed to try and hear him by the consent of the United States, which only insists on his being kept safely from escape or from danger under the eye and control of its officer. This arrangement of comity between the two governments works in no way to the prejudice of the prisoner or of either sovereignty.

The question must be answered in the affirmative.