

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable C. L. King
Assistant District Attorney
Amarillo, Texas

Dear Sir:

Opinion No. O-6633
Re: Authority of Commissioners'
Court or City Commission to
defray expense of returning
Federal prisoner to Texas
for trial.

Your recent request for an opinion of this department reveals that two persons arrested by an Amarillo police officer shot him while he was transporting them to the police station. Subsequently they fled the State, were apprehended in New Mexico, and Federal authorities having obtained jurisdiction, they were tried and convicted of Federal offenses. It is your understanding that the principal offender is to be incarcerated in Alcatraz located in San Francisco Bay and that the other will be in a Federal institution at Texarkana. Murder indictments having been returned against both offenders in Potter County, it is your desire to secure the return of these defendants to Amarillo for trial and for the purpose of securing accomplice testimony while they are still serving their Federal sentences. You state that Federal authorities have conditionally agreed to their return provided the expenses of bringing them to Amarillo and returning them to their places of confinement, including the expense of a Federal guard, be paid by Texas authorities. You have asked us the following questions in this connection:

"(1) May the Commissioner's Court of Potter County, Texas, provide funds with which to pay the expenses of returning Thompson to Amarillo to stand trial, and also the expenses of returning Day to Amarillo to testify in the trial against Thompson?

"(2) May the City Commission of the City of Amarillo, Texas, provide funds with which to pay the expenses of returning Thompson to Amarillo to stand

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable C. L. King - page 2

trial, and also the expenses of returning Day to
Amarillo to testify in the trial against Thompson?"

In the outset we should like to point out that Texas
has no right to secure the return of the prisoners inquired about
under the law of extradition as it applies only as between states
and not as between a state and the Federal government. 22 Am. Jur.
252. Since the Federal government has the right to exclusive custody
of the prisoners until they have served their sentence, they may
be returned to Amarillo only by consent of that sovereignty. 14
Am. Jur. 921. In the absence of express authority the courts
have held that the Attorney General of the U. S. as a matter of
comity may in his discretion allow the transfer of a Federal
prisoner under sentence to a state court for trial, "provided
it does not prevent enforcement of the sentence of the Federal
courts, or endanger the prisoner." See Ponzi v. Fessender, 258
U. S. 254, 66 L. Ed. 607, 22 A. L. R. 879, 42 Sup. Ct. Rep. 309;
14 Am. Jur. 921; also notes in 22 A. L. R. 886 and 62 A. L. R.
279. Furthermore to facilitate the handling of persons who have
offended both state and Federal sovereignty, the Congress in 1940
passed the following statute:

"Whenever any person confined in any penal or
correctional institution pursuant to a judgment of
conviction of an offense against the United States
has been indicted or convicted of a felony in a
court of record of any State, other than the State
in which such person is confined, the Attorney Gen-
eral shall, if he finds it in the public interest
to do so, upon the request of the Governor or the
executive authority of such state, and upon the
presentation of a certified copy of such indict-
ment or judgment of conviction, cause such person
to be transferred prior to his release to a penal
or correctional institution situated within such
State that is authorized to receive United States
prisoners. In the event more than one such request
is presented in respect to any prisoner, the Attor-
ney General shall determine in his discretion which
request should receive preference. The expense of
personnel and transportation incurred in carrying
out the provisions of the section shall be chargeable
to the appropriation for the 'support of United States
prisoners.'" Tit. 18, Sec. 733 U. S. C. A.; C. 176,
Sec. 1, 54 Stat. 175.

It would thus appear that the Attorney General of the United States in his discretion, may not only permit the trial by Texas courts of prisoners serving a Federal sentence, but that he is authorized to transfer prisoners confined out of the state to Federal institutions within the state in aid of the process.

Since the problem of securing the return of these prisoners to Amarillo is clearly not a matter of extradition and there being no express statutory authority provided for such expenditures, the power of a Commissioners' Court or a City Commission to provide them must rest on an implied authority if it exists at all.

A Commissioners' Court's authority is strictly limited to powers given by constitution or statute or to such powers as are necessarily implied therefrom.  11 Tex. Jur. 564; Baldwin vs. Travis County, (Civ. App.), 88 S. W. 480; Commissioners' Court vs. Wallace (Civ. App.) 15 S. W. 2d 535; 11 Tex. Jur. 566; and Anderson v. Wood (Sup) 152 S. W. 1084.  In the case last cited it is said, "Where a right is conferred or obligation imposed on said court, it has implied authority to exercise a broad discretion to accomplish the purpose intended."  We know of no constitutional or statutory duty, right or obligation which has been placed upon the Commissioners' Court in connection with the return of Federal prisoners to Texas for trial.  In the absence of such a provision we see no basis for implying an authority in this connection.

We believe a different rule would apply to the City Commission under the facts you have outlined in the absence of a charter provision of the City of Amarillo to the contrary. In the case of the City of Corsicana vs. Babb, (Com. App.) 290 S. W. 736, in upholding the authority of the city to appropriate funds for a special prosecutor in a murder case arising out of the killing of a city policeman while making an arrest, it was said:

"Whenever a city is authorized to appoint and have policemen charged with the duties of peace officers, the city, in the absence of charter provision to the contrary, has the implied power, exercisable at its discretion, to provide suitable means for the protection of its policemen in the bona fide discharge of their official duties.  The duties of a policeman

Honorable C. L. King - page 4

are performed for the benefit of the public, and
the public is directly concerned in preserving and
protecting these officers from the hazard of death
or bodily injuries to which the performance of their
official duties expose them. Aside from any consider-
ations purely personal to the officer, it is for the
public good that these officers, as instruments through
which the city performs its functions, shall be shielded
from the personal hazards which attend the discharge of
their official duties.

"If a city policeman be slain in the bona fide
performance of his official duties, the city has im-
plied power, unless such power be clearly denied in
its charter, to employ an attorney to prosecute his
slayer and to appropriate city funds to that purpose.
The foundation of this power does not rest in theories
of rendering benefit to the dead officer, for he can
derive no benefit from such prosecution; nor does it
rest in motives of retaliation for his death; but it
does rest in those considerations of public policy
which justify the city in protecting the instrumen-
talities through which it performs its functions,
and in adopting means deemed suitable for the pur-
pose. The selection of these means is confided to the
discretion of the city, and courts will not undertake
to control the city's discretion in this respect, un-
less the lack of relation of the selected means to
the end sought to be attained be clearly apparent.
The city, in the present instance, might well have
considered that its employment of special prosecu-
tion in the case against the Graces, as a means cal-
culated to deter law breakers from killing its police-
men in the future, would result in diminishing the
hazard of death or bodily injury to those who might
thereafter serve the city in the capacity of police-
men. For this reason, it cannot be said that there
is no relation between the services of special counsel
in such a case and the protection of policemen in the
service of the city."

It is our view that the reasoning in this case applies
with even greater force to the situation outlined in this request.
If an expenditure by the city for a special prosecutor, which

Honorable C. L. King - page 5

would only be an aid to the prosecution is warranted, then certainly expenditures which are necessary to secure jurisdiction of the person of the offender, a "sine qua non" of the prosecution, would be allowable.

We conclude, (1) that the Commissioners' Court of Potter County is not authorized to pay the expenses inquired about, and (2) that the City Commission of Amarillo may in its discretion and in the absence of charter provisions to the contrary, pay such expenses as it deems reasonably necessary to insure the protection of policemen in its service.

We trust that we have sufficiently answered your inquiry and that our views will assist you in working out your problem.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Eugene Alvis*

Eugene Alvis
Assistant

EA:zd

APPROVED JUL 2 1945

FIRST ASSISTANT
ATTORNEY GENERAL



APPROVED
OPINION
COMMITTEE
BY *Blota*
CHAIRMAN