**Wayne Hunter CARLTON, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. LR–69–C–78.**

United States District Court
E. D. Arkansas, W. D.

Sept. 24, 1969.

Wayne Hunter Carlton, pro se.

W. H. Dillahunty, U. S. Atty., E. D. of Ark. and Walter G. Riddick, Asst. U. S. Atty., E. D. of Ark., for respondent.

Memorandum & Order

HENLEY, Chief Judge.

Petitioner, Wayne Hunter Carlton, who is presently confined in the Federal Prison Camp at Eglin Air Force Base, Florida, pursuant to a judgment and sentence of this Court in the case of United States of America v. Wayne Hunter Carlton, LR–65–CR–55, attacks his judgment and commitment by means of a motion filed pursuant to 28 U.S.C.A. § 2255. The Government resists the motion, and both sides have submitted memorandum briefs.

The file in the criminal case reflects that on August 23, 1965, Carlton was indicted in the Western Division of the Eastern District of Arkansas on a charge of having violated the National Stolen Property Act, 18 U.S.C.A. § 2314, by unlawfully transporting or causing to be transported a falsely made and forged security, to-wit a $214 check, from Little Rock, Arkansas, to Atlanta, Georgia.

When the indictment was returned, petitioner was an inmate of the Florida State Penitentiary having been convicted of a crime in that State. The Government made no effort at the time to bring petitioner to Arkansas for trial on the federal charge and simply lodged a detainer against him with the State institution.

By February 6, 1967, petitioner had been released from the Florida prison and seems to have been taken into custody by federal authorities. On that date he was released on an appearance bond of $1,000.

On April 3, 1967, petitioner, represented by Florida counsel employed by him, was tried to a jury before the late Judge Gordon E. Young. He was found guilty and sentenced to four years in the penitentiary; that sentence was later reduced to two years.

On May 3, 1967, Judge Young overruled a motion for a new trial, and petitioner appealed his conviction to the Court of Appeals. On March 28, 1968, the judgment of conviction was affirmed. Carlton v. United States, 8 Cir., 391 F.2d 684. Petitioner had remained at large during the pendency of the appeal; however, he surrendered himself on May 22, 1968, and began the service of his sentence notwithstanding the fact that he had applied to the Supreme Court for a writ of certiorari. That application was denied on May 5, 1969, Carlton v. United States, 394 U.S. 1014, 89 S.Ct. 1632, 23 L.Ed.2d 40.

On May 27 petitioner commenced the instant proceeding. He attacks his conviction on a number of grounds:

1. That the failure of the Government to take steps to bring him to trial here from 1965 to 1967 deprived him of his right to a speedy trial guaranteed by the Sixth Amendment to the Constitution of the United States.

2. That he was denied due process of law and equal protection of the laws when he was called upon to plead in the presence of Government witnesses who were in the courtroom prepared to testify against him.

3. That his constitutional rights were violated "when the trial court allowed the 'Silver Platter Doctrine' to be invoked" against him.

4. That his original attorney "who was Court appointed on appeal and allowed Defendant's appeal to be discharged for lack of prosecution in a timely manner."

5. That after the trial his attorney and the Assistant United States Attorney who had handled the case agreed that petitioner should have a new trial, and that petitioner's attorney negligently failed to see to it that that alleged agreement was carried out.

Section 2255 provides that in a proceeding such as this a hearing must be held unless the motion and the files and records in the case conclusively show that petitioner is not entitled to any relief. The Court has carefully considered the petition, the arguments in support of it, and the files and records in the criminal case, and the Court is convinced that those materials do show conclusively that petitioner is not entitled to relief, and the case will be dismissed without hearing.

The charge of petitioner that his attorney permitted his appeal to be dismissed for want of prosecution is simply false. The opinion of the Court of Appeals shows that petitioner was represented by his original attorney in connection with the appeal. The case was heard by Circuit Judges Blackmun, Gibson, and Heaney, and Judge Heaney wrote a full opinion.

■ The "Silver Platter Doctrine" claim involves the action of Judge Young in admitting certain evidence seized by members of the Police Department of the City of Monroe, Louisiana, following the arrest of petitioner and others. The validity of the search and seizure was questioned at the trial and in connection with the appeal and was upheld both by the District Court and by the Court of Appeals. It is not to be considered again in this proceeding.

■ The claim that petitioner was called upon to plead in the presence of Government witnesses immediately prior to the commencement of the trial does not rise to constitutional dignity and does not render the judgment subject to collateral attack.

As to the alleged agreement for a new trial, it is the contention of petitioner that after the trial it was agreed by him and his attorney, on the one hand, and Assistant United States Attorney William F. Sherman, on the other hand, that petitioner would furnish Mr. Sherman with a sample of his handwriting; that

Sherman would have the specimen compared with the purported signatures on the check mentioned in the indictment by the Technical Laboratory of the Federal Bureau of Investigation; and that if the Bureau found that the signatures on the check did not match the handwriting of petitioner, Mr. Sherman would take steps to have the judgment vacated and a new trial granted. Petitioner claims further that after he was released on bond and returned to Florida, he gave his attorney a handwriting sample, and that the attorney negligently failed to forward it to Mr. Sherman. The Government denies that there was any such agreement.

The position of the Government that there was no such agreement as that postulated by petitioner is supported by the affidavit of Mr. Sherman, whom the Court has known for a number of years, and who is now Securities Commissioner of the State of Arkansas. The Court accepts the facts stated in the Sherman affidavit as true.

The Sherman affidavit does indicate that after the trial there was a discussion between counsel about a handwriting specimen, and Mr. Sherman stated that the Government would consider anything that was submitted.

Assuming without deciding that petitioner's original attorney negligently failed to supply Mr. Sherman with a handwriting specimen, and assuming still further for the sake of argument that an analysis of the specimen would have revealed that petitioner neither signed nor endorsed the check in question, the Court is convinced that such a showing would have done petitioner no good and that he was not prejudiced by the negligence, if any, of his original attorney.

The check referred to in the indictment and the evidence purported to be a check of the American Oil Co., drawn on the Fulton National Bank of Atlanta, Georgia, in favor of "Mr. T. F. Butler, 3901 E. Broadway, N. Little Rock, Ark.," and bearing the purported signature of Henry L. Compton who was represented as being an official of the company.

The check was dated November 10, 1964, and the Government's evidence was to the effect that on or about November 14 the check was passed at Moses Melody Shop in Little Rock in payment for a small record player. There was substantial evidence from which the jury could have found and evidently did find that petitioner was the individual who passed the check.

In January 1965 petitioner, his wife, another man, and another woman were arrested in a motel in Monroe, Louisiana. Following the arrest the two adjoining rooms occupied by the two couples were searched in circumstances described in the evidence and in the opinion of the Court of Appeals. Check writing equipment was found and blank checks of a number of companies, including about 50 blank checks of American Oil Company similar to the "Butler" check, were seized.

In the course of the trial the Government made no effort to prove that the signature and endorsement on the "Butler" check were in the handwriting of petitioner. He was not accused of forging or counterfeiting either the signature or the endorsement. He was accused of fraudulently passing the check, knowing that it was forged and counterfeit, and thereby causing it to pass in interstate commerce through ordinary banking channels to the drawee bank in Atlanta.

Proof that petitioner had written the signature or the endorsement, or both, would have been cogent evidence of guilt. Evidence to the effect that he did not do the writing would not have proved anything except that fact. The writing might have been done by anyone, including the other man with whom petitioner was arrested, or either or both of the two women.

There remains for consideration the first contention of petitioner, namely, that the Government made no effort to try him from the time when he was indicted in 1965 to the time of his release from the Florida State Penitentiary and

simply rested on its detainer during the interim.

■ On January 20 of the current year the Supreme Court held in the case of Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607, that a State having a criminal charge against a person incarcerated in a federal penal institution must upon demand or request take steps to bring the federal prisoner before the State courts for trial and thereafter return him to the federal authorities to complete the service of his federal sentence, and that if the State failed to take such steps, the State charge would have to be dismissed.[1]

The Court will assume without deciding that Smith v. Hooey, supra, applies retroactively and in converse to a State prisoner who has a federal charge pending against him and who is subject to a detainer lodged by the Government with the State institution, assuming that the particular State involved will honor a writ of habeas corpus ad prosequendum issued by a federal court.[2]

However, that assumed obligation of the Government to bring a State prisoner to trial on a federal charge presupposes that the prisoner has requested a speedy trial. It must be remembered that a delay in bringing a person to trial may cut either way; it may hurt him or it may help him. As Chief Justice Taft observed many years ago in Ponzi v. Fessenden, 258 U.S. 254, 264–265, 42 S.Ct. 309, 312, 66 L.Ed. 607:

"Delay in the trial of accused persons greatly aids the guilty to escape because witnesses disappear, their memory becomes less accurate and time lessens the vigor of officials charged with the duty of prosecution.

If a plea of guilty and imprisonment for one offense is to postpone trial on many others, it furnishes the criminal an opportunity to avoid the full expiation of his crimes. * * *"[3]

■ The petitioner in this case was aware of the federal charge against him in Arkansas. It does not appear that he filed any request, formal or informal, for a speedy trial; he did not object to being put to trial in 1967; and in the course of the trial his attorney in cross examining the identifying witnesses called by the Government made a point of the lapse of time between the passing of the check and the courtroom identification of the defendant. Hence, petitioner's claim based on the lapse of time between indictment and trial must be rejected.

All of petitioner's claims having been found to be without merit, the petition is denied.

---

1. The opinion of the Court makes it clear that the Department of Justice will honor writs of habeas corpus ad prosequendum issued by the State courts, and that the matter is governed by regulations of the Department.

2. That a State is not required to honor such a writ seems clear. The matter is one of comity. See Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309; In re Burrus, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500; Ex Parte Dorr, 3 How. 103, 11 L.Ed. 514.

3. That observation would appear particularly cogent in a case like this one where the prosecution must rely upon eye-witness identification of the defendant by persons who have seen him only once for a short period of time.