April 11, 1977

## 77–21 MEMORANDUM OPINION FOR THE PRESIDENT

### Proposals Regarding an Independent Attorney General[1]

This is in response to your request that legislation be prepared that would provide that the Attorney General should be appointed for a definite term and should be removed from office only for cause of malfeasance. For the reasons discussed below, there is serious doubt as to the constitutionality of such legislation. However, within the limits set by the Constitution, there are steps which can be take further to remove the Attorney General and the Department of Justice from political influence.

The Constitution establishes the framework within which the proposed limitation on the removal of the Attorney General must be examined. The first sentence of Article II vests the executive power of the Government in the President and charges him with the general administrative responsibility for executing the laws of the United States. Article II, § 2, provides that, with the advice and consent of the Senate, the President shall select those persons who are to act for him in executing the laws. The closing statement of Article II, § 3, the last section of the Constitution dealing with the President's powers and duties, emphasizes the President's responsibility: "He shall take Care that the Laws be faithfully executed." Thus, the President is given not only the power, but also the constitutional obligation to execute the laws.

In *Myers* v. *United States*, 272 U.S. 52 (1926), the Supreme Court held that the President had exclusive authority under the Constitution to remove a postmaster, an executive official, notwithstanding statutory attempts to restrict this power. The Court viewed the effort by Congress to restrict the discretionary right of the President to remove an officer he had appointed and for whose action he was responsible as inconsistent with basic mandates of the Constitution. Significantly, the

---

[1] This memorandum was prepared by the Office of Legal Counsel and approved by the Attorney General

Court reasoned that "to hold otherwise would make it impossible for the President, in case of political or other differences with the Senate or Congress, to take care that the laws be faithfully executed." The constitutional underpinnings of this decision stand for the proposition that the President's freedom to remove executive officials cannot be altered by legislation.

The Attorney General is the chief law enforcement officer of the United States. He acts for the President to ensure that the President's constitutional responsibility to enforce the laws is fulfilled. To limit a President in his choice of the officer to carry out this function or to restrict the President's power to remove him would impair the President's ability to execute the laws.

Indeed, the President must be held accountable for the actions of the executive branch; to accomplish this he must be free to establish policy and define priorities. Because laws are not self-executing, their enforcement obviously cannot be separated from policy considerations. The Constitution contemplates that the Attorney General should be subject to policy direction from the President. As stated by the Supreme Court: "The Attorney General is . . . the hand of the President in taking care that the laws of the United States . . . be faithfully executed." *Ponzi* v. *Fessenden,* 258 U.S. 254, 262 (1921). Removing the Attorney General from the President's control would make him unaccountable to the President, who is constitutionally responsible for his actions.

It is our conclusion that the framers of the Constitution intended for the functioning of the executive branch to rest squarely on the integrity of the President. He alone is elected by, and thus represents, all the people. For this fundamental reason it is his policy decisions that are to control as he undertakes to execute the laws.[2] Two of the Supreme Court's many relevant statements in the *Myers* case are particularly in point:

> The degree of guidance in the discharge of their duties that the President may exercise over executive officers varies with the character of their service as prescribed in the law under which they act. The highest and most important duties which his subordinates perform are those in which they act for him. In such cases they are exercising not their own but his discretion. . . . Each head of a department is and must be the President's *alter ego* in the

---

[2] The following was said by you at Attorney General Griffin Bell's swearing-in on January 26, 1977: "To the maximum degree possible, the Attorney General should personify what the President of the United States is—attitudes, philosophies, commitments—because here is an extension of the President's attempt to provide equality of opportunity and a sense of trust in the core of our American governmental institutions. . . ." This statement concisely summarizes the rationale underlying the constitutionally based prohibition on legislative restrictions of the President's power to remove such an official.

76

matters of that department where the President is required by law to exercise authority. 272 U.S. at 132–133. [Emphasis in original.]

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

Then there may be duties of a quasi-judicial character imposed on executive officers . . . , the discharge of which the President cannot in a particular case properly influence or control. But even in such a case he may consider the decision after its rendition as a reason for removing the officer, on the ground that the discretion regularly entrusted to that officer by statute has not been on the whole intelligently or wisely exercised. Otherwise he does not discharge his own constitutional duty of seeing that the laws be faithfully executed. 272 U.S. at 139.

Even though we have concluded that legislation establishing a definite term of office for the Attorney General and restricting the President's power to remove him only for cause probably would be held unconstitutional, it might be argued that these proposals could be implemented by some method other than legislation, i.e., by Executive order. Because the restrictions would be imposed not by Congress but by the President himself, and because he legally could revoke or supersede the Executive order at will, it could be argued that the Executive order would simply constitute a voluntary waiver by the President of his constitutional power to remove the Attorney General. However, by restricting his power to remove the Attorney General, the President would necessarily be restricting his influence over that Cabinet officer. Indeed, that would be the declared purpose of the restriction. And by restricting his influence, he would be restricting his ability to fulfill his constitutional responsibility to ensure that the laws be faithfully executed. That constitutional responsibility for the execution of the laws cannot be waived. Therefore, it is our view that an Executive order, as well as legislation, restricting the President's right to remove the Attorney General would be constitutionally suspect.

We have not addressed specifically the question whether the Attorney General could be placed in some sort of separate, non-Cabinet status with a fixed term and subject to removal only with consent of the Congress. This would amount to an attempt, in effect, to remove the Attorney General from the executive branch. The foregoing discussion establishes that the President must have control over the country's chief law enforcement official because of the President's constitutional duty faithfully to execute the Nation's laws. Having reached this conclusion, it follows that there is no method, short of a constitutional amendment, to separate the Attorney General from Presidential control. One illustration of the constitutional problem raised by such a proposal is that if the Attorney General is removed from the executive branch he may become overly responsive to Congress, by virtue of the appropriation process, to cite only one example, and this would clearly

affect the separation of powers among the three branches that is established by the Constitution. Analogous problems are easy to imagine.

There is a legal maxim that hard cases make bad law. We believe that implementing the specific proposal mentioned above would be permitting a hard case, Watergate and its aftermath, to produce bad law. It is the responsibility of the Chief Executive to make certain that the system, particularly including the Justice Department, is not subject to abuse for political purposes. That involves trust and integrity—two things no law can provide or guarantee. The relationship between the President and the Attorney General is governed by the Constitution. The fundamental aspects of this relationship, that is, the President's power to appoint and remove Executive officers in his discretion, cannot be altered without impairing the President's constitutional obligations to control the executive branch and faithfully execute the Nation's laws.

GRIFFIN B. BELL
*Attorney General*