Terry Eugene SAVAGE EL, Petitioner,

v.

STATE OF MISSOURI, et al.,
Respondents.

No. 82–0864–CV–W–1.

United States District Court,
W.D. Missouri, W.D.

Feb. 3, 1983.

Terry Eugene Savage El, pro se.

John Ashcroft, Atty. Gen., Rosalynn Van-Heest, Asst. Atty. Gen., Jefferson City, Mo., for respondents.

## MEMORANDUM OPINION AND ORDERS DIRECTING FURTHER PROCEEDINGS

JOHN W. OLIVER, Senior District Judge.

### I.

Petitioner is currently in federal custody serving a 15 year regular adult federal sentence for robbery with assault, imposed September 23, 1971, and a consecutive federal life sentence for first degree murder, imposed January 13, 1977. Petitioner has filed a *pro se* petition for habeas corpus in which he attempts to attack two 20 year consecutive sentences imposed June 20, 1973 after trial in the Circuit Court of Jackson County, Missouri for robbery in the first degree and for assault with intent to kill, with malice. Petitioner's State convictions resulted from a trial conducted in the Circuit Court of Jackson County, Missouri pursuant to petitioner's invocation of the Uniform Agreement on Detainers after petitioner was committed to federal custody pursuant to his first federal conviction. Petitioner's State court convictions were affirmed by the Missouri Court of Appeals, Kansas City District, on direct appeal in *State v. Savage*, 522 S.W.2d 144 (Mo.App. 1975).

We have carefully considered the exhibits attached to the petition for habeas corpus, those attached to the response to the order to show cause filed by the Attorney General's office, and those attached to petitioner's traverse filed January 25, 1983. We find and conclude that the Missouri Court of Appeals properly determined that the Uniform Agreement on Detainers had not been violated and that petitioner's claims to the contrary are without merit.

We further find and conclude that petitioner's claim that the State of Missouri has somehow waived its right to the execution of petitioner's State sentences is without merit for the reasons stated in *Brown v. State,* 452 S.W.2d 176 (Mo.Sup.Ct.1970), and

the cases cited therein, and in the cases cited by Judge Daugherty in *Gregory v. Page,* 289 F.Supp. 316 (E.D.Okl.1968). *See* also and *compare* the rationale stated in *Ponzi v. Fessenden,* 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607 (1922).[1]

The fact that petitioner's claim for federal habeas corpus relief is without merit, however, does not end the matter. Section 2243 of Title 28 U.S.C. imposes the duty upon a district court to dispose of an application for writ of habeas corpus "as law and justice require." Various of the exhibits attached to the pleadings filed in this case establish that justice requires that an order be entered directing further proceedings before the pending application for habeas corpus is dismissed.

We discuss those exhibits in the next part of this memorandum opinion.

## II.

Petitioner's amended supplemental petition for writ of mandamus filed in the Supreme Court of Missouri alleged in paragraph 13 on page 2 that the federal Prison authorities offered to parole petitioner to Missouri custody to commence service of his Missouri state sentences but that "the State of Missouri ultimately refused petitioner's custody."

██ The files and records reflect that sometime prior to February 10, 1980 the Warden at Terre Haute Penitentiary made inquiry of the Sheriff of Jackson County, Missouri as to whether the State of Missouri would accept custody of the petitioner

and another inmate of that federal penitentiary. The Warden was obviously familiar with the fact that under the law of most states and certainly under the law of Missouri, a State court can not order a State sentence to be served concurrently with a federal sentence during the time the defendant is in federal custody.

On the other hand, the Attorney General of the United States, acting through appropriate designated officials of the Federal Bureau of Prisons, can designate a State correctional institution as the institution in which a federal sentence is to be served. The law is also clear that if the State penal authorities agree to accept a transfer of custody, time served by the defendant after he is received in State custody is credited against both his State and his federal sentence. The factual circumstances set forth in *Brown v. State, supra,* at 179 reflect the routine manner in which federal penal authorities respond to a State's request that a defendant be transferred to State custody in order to permit concurrent service of a federal and a State sentence.

While the February, 1980 request of the Warden of the United States Penitentiary at Terre Haute is not in the file, the response of the Chief of Detectives attached to the Sheriff's office of Jackson County, Missouri reflects that an Assistant Prosecuting Attorney of Jackson County, Missouri gave the Chief of Detectives inaccurate information which the latter stated in a letter he wrote to the Warden on February

---

1. We have not overlooked petitioner's argument that there is some sort of a conflict between the judgment entered in State Cases Nos. C–40640 (robbery, first degree) and C–40641 (assault with intent to kill with malice), which directed that the defendant be remanded to State custody "to be kept, confined, and treated in the manner directed by law" and that defendant eventually serve the two 20 year consecutive sentences "in the Reception and Diagnostic Center, Department of Corrections, Jefferson City, Missouri," and an order entered in Case No. C–39853 (tampering with a motor vehicle) in which petitioner's probation in that case, granted September 29, 1970, was revoked and defendant was "remanded to the custody

of the Missouri Department of Corrections to execute sentence imposed on the 29th day of September, 1970 and in which it was further ordered that "defendant be remanded to Jackson County Jail for return to Federal Authorities at El Reno."

Judge Moore's order in Case No. C–39853 remanding petitioner to federal custody was consistent with obligations and duties imposed by the Uniform Agreement on Detainers and the subsequent physical delivery of petitioner's custody back to federal authorities does not present a federal constitutional claim which petitioner may assert under the legal authorities above cited.

10, 1980. The Captain of Detectives advised the Warden that he had had the Assistant Prosecuting Attorney review the petitioner's file and that he had ascertained that the petitioner had been convicted rather than merely charged. The Captain of Detectives therefore relayed the advice given him by the Assistant Prosecuting Attorney and stated to the Warden that "we have absolutely no legal authority to retain these individuals."

On November 20, 1980 the Warden at the Terre Haute Penitentiary wrote the Director of the Missouri Division of Corrections in regard to the petitioner. That letter, copy of which is attached to this memorandum opinion, requested that the State of Missouri review and give consideration to the transfer of petitioner's custody to State custody so that petitioner could begin service of his State sentences.

The Warden's letter was referred to a case worker "assigned to Interstate Compact" who also inaccurately advised the federal Warden in a letter dated December 31, 1980 that:

Be advised that the Missouri Division of Corrections has no jurisdiction in this matter at this time. We must refer you to the Jackson County, Missouri authorities who can take custody of these inmates under the Interstate Agreement on Detainers.[2]

On January 12, 1981 the Warden, in accordance with the suggestion of the case worker, wrote the Sheriff of Jackson County, Missouri a letter which made the same

request earlier made to the Director of the Missouri Division of Corrections. The January 12, 1981 letter, however, added that:

A previous request was submitted to Mr. Jenkins, the Director for the Missouri Division of Corrections, on November 20, 1980. On December 31, 1980 a response concerning this request was received which indicated that this matter should be referred to Jackson County Authorities. We were informed that it is the responsibility of Jackson County Authorities to take custody of inmates under the Inter-State Agreement on Detainers. Enclosed please find a copy of this response for your review.

It is apparent that neither the Jackson County Sheriff nor any other Jackson County authority responded to the Warden's January 12, 1981 letter. For it is clear that the petitioner, on March 20, 1981, wrote the Attorney General of Missouri a *pro se* letter in which he requested clarification of the status of his request for transfer to State custody. He advised the Attorney General in part that:

Several months ago, I directed a request to the prison administration here that they allow me to transfer to the State of Missouri to begin service of my state sentence. This request was considered and granted by prison officials, who in turn notified the State of Missouri that they were prepared to release me. Notification was directed to Mr. Donald R. Jenkins, Director, Division of Corrections, Jefferson City, Missouri and to Sheriff Robert J. Rennau of Lee's Sum-

---

**2.** It is not clear whether the case worker was responding to the earlier letter of the Warden or to the Warden's letter of November 20, 1980. We say this because the case worker referred only to the Warden's "recent letter," not identifying it by date. The possibility that the case worker was responding to the same letter that the Chief of Detectives of the Jackson County Sheriff's office responded to is suggested by the fact that the case worker responded in regard to both the petitioner and the second individual in federal custody, whereas the Warden's November 20, 1980 letter was in regard solely to the petitioner.

The case worker's inaccurate notion that the Missouri Division of Corrections "has no jurisdiction in this matter at this time" and that the State of Missouri could not accept the proper transfer until petitioner and the other inmate were "in the custody of Jackson County" is not affected by which letter of the Warden was being responded to. The case worker's letter again referred the Warden "to the Jackson County, Missouri authorities," whom he erroneously assumed could accept custody of the petitioner "under the Interstate Agreement on Detainers."

mit, Missouri. (See documents attached hereto).

As indicated in the attached documents, those authorities contacted in Missouri have responded that they do not have any legal authority to take custody of me as per request of the Bureau of Prisons.

In directing this letter to your office, I would like to request a clarification on what state agency has proper legal authority to take custody of me to begin service of my State convictions.

An Assistant Attorney General of Missouri wrote petitioner on April 15, 1981 a letter which stated:

Attorney General Ashcroft has asked me to respond to your letter requesting information concerning your conviction in the State of Missouri and possible transfer to begin service of your sentence in this state.

I am forwarding your letter to the Division of Corrections because they are in a better position to determine the current status of your Missouri convictions and sentence.

Thank you for your cooperation.

And on April 22, 1981 the Executive Assistant of the Missouri Division of Corrections wrote the petitioner a letter which stated the following:

Your letter of March 20, addressed to Attorney General, John D. Ashcroft, has been forwarded to me for response.

It will be necessary for you to contact the Prosecuting Attorney, Jackson County Courthouse, 415 E. 12th Street, Kansas City, Missouri, 64106, and inform him that you wish to begin serving your Missouri sentence.

The petitioner, having earlier been informed that the Prosecuting Attorney had stated that the Jackson County authorities "have absolutely no legal authority" to accept custody of the petitioner, then attempted to invoke the federal habeas jurisdiction of this Court in reliance upon principles stated by then Chief Judge Becker in

*Brager v. Missouri,* 367 F.Supp. 752 (W.D. Mo.1973).

The legal authorities to which we have made reference above clearly establish that some person is authorized by the laws of Missouri to make an appropriate judgment as to whether the State of Missouri is willing to accept the transfer of custody proffered by the federal correctional authorities. We are advised that the petitioner has recently been transferred from the penitentiary at Terre Haute to the Medical Center for Federal Prisoners at Springfield, Missouri. The fact that the Bureau of Prisons has exercised its power to make such a transfer does not affect the disposition of this case.

We are satisfied that under all of the facts and circumstances, justice requires that the appropriate Missouri official give an answer to the request of the federal correctional authorities as to whether the State of Missouri will accept transfer of the petitioner's custody. This Court makes clear that it does not indicate any view in regard to whether the appropriate Missouri authorities should or should not exercise the discretion vested by law in regard to whether the proffer of transfer by the federal prison authorities be accepted. We do believe, however, that the Attorney General of this State will be in a position to ascertain the particular Missouri official who has power to respond to the request of federal correctional authorities to accept a transfer of petitioner's custody and whether that official will make an appropriate response on the merits of that request.

For the reasons stated, it is

ORDERED (1) that within fifteen (15) days of this order the office of the Attorney General shall prepare, serve and file a response to this order which shall state what official in the State of Missouri has power to advise the federal correctional authorities as to whether the State of Missouri will accept the transfer suggested in Warden Lippman's November 20, 1980 letter and

whether such Missouri official will make an appropriate response, on the merits, to the request made by the federal correctional authorities. It is further

ORDERED (2) that the Clerk of this Court shall forward a copy of this memorandum opinion and order directing further proceedings to the petitioner at the Medical Center for Federal Prisoners at Springfield, Missouri, rather than at his former address at Terre Haute penitentiary and that the Attorney General's office shall serve a copy of its response on petitioner at the same address.

---

EXHIBIT I

## U.S. Department of Justice

### Federal Prison System
### *U. S. Penitentiary*

---

Mr. Donald R. Jenkins, Director
Division of Corrections
911 Missouri Boulevard
Jefferson City, Missouri 65101

*Terre Haute, IN 47808*
November 20, 1980

RE: SAVAGE, Terry
Our: Reg. No. 36676–115 (3)

Dear Mr. Jenkins:

The purpose of this correspondence is to request your review and consideration for the transfer of Terry Savage to the Missouri Division of Corrections. Mr. Savage is a 31 year old offender from the Marlboro, New Jersey, who is currently serving a 15 year regular adult sentence for Robbery With Assault, and a Life sentence (consecutive) for First Degree Murder. Sentencing on these federal sentences occurred on September 23, 1971 and January 13, 1977. He will be eligible to appear before the U.S. Parole Commission on his federal sentence on June 6, 1981.

On June 20, 1973, in the Circuit Court, Jackson County, state of Missouri, Mr. Savage was sentenced to a 20 year sentence for Assault With Intent To Kill With Malice, and a 20 year sentence for Robbery In The First Degree, to run consecutively. In addition, a warrant was issued for parole revocation for Tampering With a Motor Vehicle.

Mr. Savage has requested transfer to the state of Missouri so he can begin service of his state sentence. We are requesting that you consider accepting Mr. Savage for transfer so he can begin service of his Missouri state sentence with his Federal sentence running concurrently. If accepted for transfer, our Regional Office in Kansas City, Missouri, would be notified to coordinate this procedure with your office.

Mr. Savage received his Life sentence as a result of a Murder conviction of another inmate while confined in the Federal Prison System. Mr. Savage has received one minor incident report in four years and has received excellent work reports from his work supervisor. He is currently enrolled in a college curriculum in our Education Department, and has progressed in an above average manner.

I would like to thank you in advance for your consideration of this matter, and I hope that this information will be sufficient for making a determination on this matter. If you desire any additional information and/or clarification, please do not hesitate to contact my office.

Sincerely,

R. J. Lippman
Warden