[892 NYS2d 651]

In the Matter of CATSKILL MOUNTAINS CHAPTER OF TROUT UN-
LIMITED, INC., et al., Respondents, v DENISE M. SHEEHAN, as
Commissioner of Environmental Conservation, et al.,
Respondents, and CITY OF NEW YORK et al., Appellants.

Third Department, January 7, 2010

---

**APPEARANCES OF COUNSEL**

*Michael A. Cardozo, Corporation Counsel*, New York City (*Julie Steiner* of counsel), for appellants.

*Daniel E. Estrin, Pace Environmental Litigation Clinic, Inc.,* White Plains, for Catskill Mountains Chapter of Trout Unlimited, Inc. and others, respondents.

*Andrew M. Cuomo, Attorney General*, New York City (*Gregory J. Nolan* of counsel), for Denise M. Sheehan and another, respondents.

**OPINION OF THE COURT**

KAVANAGH, J.

Respondent New York City Department of Environmental

Protection operates the New York City Catskill Water Supply System and, as part of that system, transfers water from the Schoharie Reservoir in Delaware County through the Shandaken Tunnel into the Esopus Creek, which flows into the Ashokan Reservoir in Ulster County. In March 2000, petitioners—five not-for-profit corporations whose members use the Esopus Creek for numerous business and recreational activities—commenced an action in federal district court alleging that this transfer of water constituted a "discharge of pollutants" from a "point source" pursuant to the Clean Water Act (33 USC § 1311 [a]; § 1362 [12]; § 1251 *et seq.*; *see* ECL 17-0801 *et seq.*), and required a National Pollutant Discharge Elimination System (hereinafter NPDES) permit (*see* 33 USC § 1342). Ultimately, federal courts agreed with petitioners and ruled that respondent City of New York had violated the Clean Water Act by transferring water through the tunnel without a permit and, in addition to imposing a fine, issued an injunction directing the City to apply for a State Pollutant Discharge Elimination System (hereinafter SPDES) permit (*see* ECL 17-0801)—New York's equivalent to the federally administrated NPDES permit (*see Catskill Mtns. Ch. of Trout Unlimited, Inc. v City of New York*, 244 F Supp 2d 41, 55-56 [ND NY 2003]; *see also Catskill Mtns. Ch. of Trout Unlimited, Inc. v City of New York*, 451 F3d 77 [2d Cir 2006]; *Catskill Mtns. Ch. of Trout Unlimited, Inc. v City of New York*, 273 F3d 481 [2d Cir 2001]).

Pursuant to that order, the City subsequently applied for a SPDES permit and, following an issues conference and adjudicatory hearing held before an Administrative Law Judge, a permit was issued in September 2006, which allowed for the discharge of water through the Shandaken Tunnel into the Esopus Creek. Thereafter, petitioners commenced this CPLR article 78 proceeding challenging the issuance of the SPDES permit by respondent Department of Environmental Conservation (hereinafter DEC) contending that it was affected by an error of law, in that the permit contained a number of conditions that exempted these discharges from compliance with both the Clean Water Act and New York State's water quality standards. Specifically, petitioners argued that the exemptions in the permit allowed the City, when discharging this water, to avoid effluent and temperature limitations and water quality standards imposed by federal and state law and that such activity can only be authorized after the City has obtained a variance issued during the regulatory process (*see* 6 NYCRR 702.17). Supreme Court granted the petition, vacated the determination issuing the

SPDES permit and remitted the matter to DEC for further proceedings.

Before Supreme Court issued its judgment granting the petition, the City and its Department of Environmental Protection (hereinafter collectively referred to as the City) moved for leave to amend their answer seeking to add an affirmative defense and a cross claim, both of which were based upon recent changes in applicable federal environmental regulations. Specifically, the City argued that a permit was no longer required since the Environmental Protection Agency had adopted a regulation known as the Water Transfers Rule (*see* 40 CFR 122.3), which exempted "water transfers" between two distinct bodies of water from the NPDES permit requirement. In a judgment entered on November 17, 2008, Supreme Court denied the City's motion to amend its answer and found that it did not have the power to alter or modify federal court's order requiring the City to obtain a SPDES permit. The City now appeals both from the court's judgment granting the petition and the judgment denying the City's motion to amend its answer.

The City's primary argument on this appeal is that the Water Transfers Rule as promulgated by the Environmental Protection Agency relieves it of the obligation to apply for a permit to run this water through the Shandaken Tunnel and into the Esopus Creek and, as a result, the petition should have been dismissed. It also contends that Supreme Court was obligated to adopt the reasoning of a federal court that found that the Water Transfers Rule represented a reasonable interpretation of the Clean Water Act (*see Friends of Everglades v South Florida Water Mgt. Dist.*, 570 F3d 1210 [11th Cir 2009]),[1] and that a permit for this type of activity was no longer legally required.

█ While, on its face, the Water Transfers Rule appears to apply to this transfer of water through the Shandaken Tunnel, we agree with Supreme Court that the City must comply with the orders issued in federal court (*Catskill Mtns. Ch. of Trout Unlimited, Inc. v City of New York*, 244 F Supp 2d 41, 51-56 [ND NY 2003], *supra*) and obtain a SPDES permit. As long as that order requiring the City to obtain a permit remains in place, Supreme Court is without authority to alter or modify it.

"The chief rule which preserves our two systems of

---

**1.** Petitioner Catskill Mountains Chapter of Trout Unlimited, Inc. has filed an action in federal court challenging the Water Transfers Rule (*Catskill Mountains Chapter of Trout Unlimited, Inc. v United States Envtl. Protection Agency*, 630 F Supp 2d 295 [SD NY Apr. 29, 2009]).

courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose . . .

"These courts do not belong to the same system, so far as their jurisdiction is concurrent; and although they coexist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty" (*Ponzi v Fessenden*, 258 US 254, 260-261 [1922] [internal quotation marks and citations omitted]).

Even if we were to agree with the City that the Water Transfers Rule effectively eliminated the requirement that it obtain a SPDES permit, that rule only addressed the City's obligation under the Clean Water Act and did not prevent DEC from applying applicable state law and requiring that a permit be obtained pursuant to the State's Water Pollution Control Act (*see* ECL 17-0801, 17-0803, 17-0809).[2]

Since the City, in our view, is required to obtain a permit to transfer water through the Shandaken Tunnel into the Esopus Creek, we must address petitioners' challenge as to the terms of the permit that was issued by DEC. In that regard, as previously noted, the permit authorized the City in certain situations to deviate from the Clean Water Act's effluent limitations and New York State's water quality standards when it transferred water through the Shandaken Tunnel and into the Esopus Creek. Specifically, the permit exempted the City from these regulations if it determined that water was needed to refill the reservoir, or for special recreational events that occur on the Esopus Creek, or to insure that the water supply in its reservoir system was properly managed. However, there are strict guidelines that must be followed in the SPDES and NPDES permitting process (*see* ECL 17-0801, 17-0811, 17-0813, 17-

---

2. In fact, on at least one occasion, DEC indicated that it would continue to require a SPDES permit for the City's operation of the Shandaken Tunnel regardless of the legal status of any applicable federal regulation.

0815, 17-0817; *see also* 33 USC §§ 1311, 1312, 1313, 1316, 1317, 1341, 1342) and, as Supreme Court properly noted, there is no regulatory authority that allows for the inclusion of multiple exemptions from effluent limitations and state water quality standards in a SPDES permit. In this regard, 6 NYCRR 702.17 (a) states that DEC "may grant, to an applicant for a SPDES permit or to a SPDES permittee, a variance to a water quality-based effluent limitation or groundwater effluent limitation included in a SPDES permit" if it is shown "that achieving the effluent limitation is not feasible" as a result of various conditions then in existence (*see* 6 NYCRR 702.17 [b] [1], [2], [3], [4], [5], [6]). Since the City has not obtained a variance, Supreme Court properly vacated DEC's determination to issue a SPDES permit that contained these exemptions and appropriately remitted the matter to the agency for further proceedings.

■ Given our determination that Supreme Court was without authority to alter or modify the federal court requirement that the City obtain a SPDES permit, we find no abuse in its decision denying the City's motion to amend its answer (*see* CPLR 3025 [b]; *Shelton v New York State Liq. Auth.*, 61 AD3d 1145, 1149 [2009]).

CARDONA, P.J., LAHTINEN, McCARTHY and GARRY, JJ., concur.

Ordered that the judgments are affirmed, without costs.