**UNITED STATES of America,
Plaintiff,**

v.

**Sharon McGrew POLLARD, Defendant.**

**No. 17288-1.**

United States District Court
W. D. Missouri, W. D.

June 16, 1969.

Calvin K. Hamilton, U. S. Atty., Anthony P. Nugent, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Jon Waller, Kansas City, Mo., Legal Aid & Defender Society of Greater K. C., for defendant.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

Difficulties and delays have been encountered in this district in connection with the administration of the Narcotic Addict Rehabilitation Act of 1966.

On April 17, 1969, we issued the memorandum and order attached hereto as Appendix A, in which questions presented (a) by the form and substance of the physicians' reports required by Section 3413, Title 42, United States Code, and (b) the legal sufficiency of a form of waiver of the hearing required by that section were discussed in detail.

That memorandum opinion made clear that it was not written in criticism of any of the personnel at the Research Centers at Lexington, Kentucky or Fort Worth, Texas, but that it was prepared and filed consistent with a prior court en banc policy adopted in this district designed to avoid subsequent habeas corpus proceedings in cases administered under the Narcotic Addict Rehabilitation Act of 1966.

The order entered April 17, 1969 was designed to ascertain whether the Surgeon General and the officials at the Lexington Medical Research Center were of the opinion that a valid commitment could have been made on the basis of the data submitted this Court in this particular case. That data consisted only of a form waiver of hearing letter and two conclusory letters submitted by two physicians. Those letters were unsupported by any work-up, medical reports, or any other appropriate psychiatric data.

After noting that "friction between courts and others in the administration of the Narcotic Addict Rehabilitation Act of 1966 can be avoided only if the reasons which underlie procedural requirements are understood by all concerned with the administration of that law," it was ordered that those responsible for the administration of the Act be afforded the opportunity of stating

and showing whether the data initially presented to this Court was, in their judgment, legally adequate to comply with the requirements of applicable law. That order invited suggestions in regard to how this Court could assist in the more efficient administration of the Narcotic Addict Rehabilitation Act of 1966.

A response to that order was filed May 26, 1969. It is attached as Appendix B. That response commendably and candidly concedes the conclusory opinions initially presented to this Court "were in fact and in law inadequate for the reason that 42 U.S.C. § 3413 requires that each examining physician shall report to the court" and that "each such report shall *include* a statement of the examining physicians' conclusions * * *." The response appropriately stated that "the use of the word 'include' in the section clearly indicates that something more than the physicians' mere conclusions are to be presented to the court" and that "clearly the Congress intended that the reports be supported by appropriate factual data."

■ Plaintiff's response did not make any suggestion as to how the required supporting factual data be presented. The earlier memorandum opinion in this case made reference to this Court's experience with cases involving inmates of the Medical Center for Federal Prisoners at Springfield, Missouri. Questions of substance and procedure similar to those presented under the Narcotic Addict Rehabilitation Act of 1966 are also presented in cases involving the administration of Chapter 313, Title 18, United States Code. The administration of both acts require the presentation of expert medical opinion, which must be based on appropriate supporting factual and medical data.

Existing Court en banc procedures applicable to Springfield Medical Center cases permit the transmittal of all supporting medical and psychiatric data to this Court in a sealed envelope to be opened only pursuant to order of Court. After appropriate use is made of that data at a particular hearing the data is again placed under seal, to be opened only upon order of Court for good cause shown. Those procedures were adopted in recognition of and consistent with medical opinion that particular data should not be revealed to a particular patient without the consent of his physician.

The Court en banc procedures adopted in cases involving the administration of Chapter 313 have worked efficiently and effectively (a) to provide this Court with appropriate supporting data for medical opinions required by law and (b) to protect the medical interest against indiscriminate distribution of confidential medical data. Inquiry made of and by the United States Attorney's office supports our judgment that procedures similar to those followed in regard to Springfield Medical Center cases may, with equal efficiency and effectiveness, be followed in connection with cases arising under the Narcotic Addict Rehabilitation Act of 1966.

This memorandum and order was circulated among all the active judges of this Court before its publication. The policy determinations heretofore made concerning the administration of the Narcotic Addict Rehabilitation Act of 1966 in this district were again reviewed at a meeting of the Court en banc on June 13, 1969.

Chief Judge William H. Becker, Judge William R. Collinson, and Judge Elmo B. Hunter agree that the prior policy be confirmed and approve the further implementation of that policy by the orders entered in this case. Responsibility for this particular case, of course, remains with the judge of this division of the Court.

For the reasons stated, it is

■ ORDERED that this Court's policy against acceptance of a waiver of any hearing required by the Narcotic Addict

Rehabilitation Act of 1966, unless such Waiver is made in open court, should be and is hereby confirmed. It is further

■ ORDERED that procedures similar to those followed in cases involving the administration of Chapter 313, Title 18, United States Code, shall be followed in the administration of cases involving the administration of the Narcotic Addict Rehabilitation Act of 1966. It is further

ORDERED that the United States Attorney for this district shall forward copies of this memorandum and order to all appropriate persons charged with the administration of the Narcotic Rehabilitation Act of 1966 and that he appropriately advise such persons of the requirements and procedures to be followed in this district in all future cases.

Appendix A.

MEMORANDUM OPINION
AND ORDER

Difficulties and delay in processing this case make it appropriate that this memorandum and order be prepared and filed in order that like difficulties and delay be avoided in future cases under the Narcotic Addict Rehabilitation Act of 1966.

This case was commenced by the filing of a petition for commitment by the United States Attorney on February 27, 1969. On the same day, and after an appropriate court hearing we entered an order directing that the defendant appear on March 3, 1969.

On March 3, 1969, after holding an appropriate evidentiary hearing, the Court found that the allegations of the petition were true and ordered the defendant committed to the custody of the Surgeon General of the United States for confinement in the National Institute for Mental Health Clinical Research Center, Lexington, Kentucky, for a period of thirty (30) days for the purpose of preliminary examination by two physicians, one of whom to be a psychiatrist.

On March 21, 1969, Dr. B. W. Nelson, a staff physician at Lexington, wrote the United States Attorney a conclusory letter in which he expressed the opinion that the defendant was a narcotic addict and that she was likely to be rehabilitated through treatment under the provisions of the Narcotic Addict Rehabilitation Act of 1966. No work-up or supporting data was forwarded with that letter. On March 24, 1969, Dr. Thomas P. Benton, staff psychiatrist at Lexington, wrote a similar conclusory letter to United States Attorney. That letter was likewise unsupported by data of any sort.

The United States Attorney also presented to this Court a form letter dated March 26, 1969 over the signature of Dr. Robert W. Rasor, Chief of the Clinical Research Center at Lexington, which stated, among other things, that "the patient has executed a waiver of the hearing provided for under Section 304 of the Act" and that "such waiver is enclosed and is submitted for filing in this proceeding."

It is therefore apparent that Dr. Rasor initially requested, on the basis of the two conclusory letters and a form waiver, that an order be entered by this Court committing the defendant to the care and custody of the Surgeon General of the United States for the three year period, including the six month period of hospitalization.

Because the thirty day preliminary examination was due to expire on April 7, 1969, this case was set for hearing on that date in compliance with the mandatory requirement of Section 3413, Title 42, United States Code. The data upon which the Court's order was sought, of course, did not come to the attention of the Court until the case was called on the docket.

Section 3413 mandatorily provides that upon the filing of the physicians'

reports with the court, the defendant examined "*shall be returned to the court* for such further proceedings as [the court] may direct under this subchapter." We could not proceed at the April 7, 1969 hearing because the data furnished by the Clinical Research Center was legally insufficient to support a valid order of commitment.

■ Section 3413 obviously contemplates that something more than an examining physician's conclusory letter be included in the reports to be submitted to the court. That section provides that "each such report shall *include* a statement of the examining physician's conclusions as to whether the patient examined is a narcotic addict and is likely to be rehabilitated through treatment." We think it obvious that the usual medical data upon which those conclusions are based are to be included in the report required by the statute. We thought that question had been decided in the course of processing the case of United States v. Barry Stidham, No. 16806–1, decided October 23, 1968, during the course of which psychiatric work-up, social history, and similar medical data were sought and received in evidence after consultation with and approval of the Surgeon General's Washington office.

It is inevitable that particular individuals under civil commitment to the Surgeon General will test the commitment by habeas corpus. If the district court had based its order upon the mere conclusions of the examining physicians, these physicians from Lexington and Fort Worth would be required to testify at the habeas corpus evidentiary hearing. The physicians will then have to travel to district courts throughout the United States.

It should also be apparent that district court acceptance of the sort of form waiver tendered in this case, routinely obtained by physicians or other persons untrained in the law, all totally without appropriate judicial supervision, presents a like anticipatable problem which should be avoided. The circumstances under which a waiver may be approved as valid are controlled by principles announced over thirty years ago by the Supreme Court of the United States in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Compare McCarty v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, (1969), but not yet reported.

As a matter of Court en Banc policy, this Court, together with many other district courts throughout the United States, has refused to subject itself and all other courts throughout the land to orders which, if questioned by habeas corpus, would require evidentiary hearings and the necessary travel of physicians stationed at Lexington, Kentucky and Fort Worth, Texas, throughout the country. It was for similar reasons that this Court refused to accept the unsupported conclusions of Drs. Benton and Nelson.

■ Dr. Benton's letter to this Court of April 10, 1969 and Dr. Nelson's telegram adopting Dr. Benton's report as his own apparently establish that no appropriate work-up medical report or other data was available to accompany the conclusions initially forwarded, for still unexplained reasons, to the United States Attorney. The absence of routine supporting medical data, if presented in a subsequent habeas corpus proceeding attacking the legality of defendant's custody, would have presented an extremely difficult case for a habeas corpus judge.

Experience with persons committed under the Narcotic Addict Rehabilitation Act of 1966 establishes that the desire and efforts to be relieved of the restrictions of Surgeon General custody, including post-hospitalization care, vary only in degree from the efforts of persons in custody of the Attorney General under other provisions of the statutes of the United States. The same considerations which underline the necessity

for strict observation of all procedural and constitutional requirements when one is deprived of his liberty by the criminal process are equally applicable to situations involving a similar deprivation by civil process. Experience in regard to both situations teaches that attempts to take shortcuts inevitably lead to the expenditure of far greater amounts of time and trouble than if commitment proceedings are handled in strict accordance with law from the outset.

■ This memorandum opinion is filed for the purpose of making clear the position of this Court in regard to the procedures it will follow in connection with commitments pursuant to the Narcotic Addict Rehabilitation Act of 1966. It is not written in criticism of any of the personnel at the Research Clinics at Lexington or Fort Worth. We have no doubt that Dr. Benton and Dr. Nelson appropriately discharged the duties imposed upon them by law. But neither have we doubt that the conclusory letter initially presented this Court was insufficient upon which to base an order which would limit the defendant's personal liberty for a period of three years. And certainly we have no doubt that the dangers inherent in any acceptance of the form waiver forwarded this Court require that we refuse to accept such a waiver in this or any other case. Compare Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

Long experience in processing cases arising out of the Medical Center for Federal Prisoners teaches that until administrative procedures are carefully reviewed and established in light of applicable legal and constitutional principles that the opportunity for confusion and misunderstanding continues unabated. Friction between courts and others in the administration of the Narcotic Addict Rehabilitation Act of 1966 can be avoided only if the reasons which underlie procedural requirements are understood by all concerned with the administration of that law.

For this reason the officials at the Lexington Medical Research Clinic should be afforded the opportunity of presenting suggestions in support of their idea that a valid commitment could have been ordered on the basis of the data initially submitted this Court. That data, as above stated, included only Dr. Rasor's form waiver letter of March 26, 1969 and its enclosure, Dr. Nelson's conclusory letter of March 21, 1969, and Dr. Benton's conclusory letter of March 24, 1969.

For the reasons stated, it is

ORDERED that plaintiff be afforded that opportunity of preparing and filing appropriate suggestions in support of its initial presentation of data to this Court as above discussed. Such suggestions, together with an appropriate brief of the legal authorities upon which plaintiff relies shall be filed within fifteen (15) days of this memorandum and order. It is further

ORDERED that should plaintiff agree that such data as initially presented was inadequate in fact and in law, an appropriate statement shall be filed within fifteen (15) days in which such agreement is stated. It is further

ORDERED that if plaintiff has any suggestion in regard to how this Court can assist in the more efficient administration of the Narcotic Addict Rehabilitation Act of 1966 it should feel free to make such suggestions so that the same may be considered by this Court.

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

**FILED**

MAY 26 1969

J. C. TRUMAN, CLK.

BY _____

DEPUTY CLERK

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. ) No. 17288-1
)
SHARON McGREW POLLARD, )
)
Defendant. )

SUGGESTIONS AND RESPONSE TO COURT'S MEMORANDUM
OPINION AND ORDER

In response to the court's order of April 17, 1969, the plaintiff now agrees that the data initially presented to the court in support of the opinions of the physicians regarding defendant's narcotic addiction and possibility of rehabilitation of defendant were in fact and in law inadequate for the reason that 42 U.S.C. § 3413 requires that each examining physician shall report to the court and that "each such report shall include a statement of the examining physician's conclusions as to whether the patient examined is a narcotic addict and is likely to be rehabilitated through treatment." The use of the word "include" in this section clearly indicates that something more than the physician's mere conclusions are to be presented to the court. Clearly the Congress intended that the reports be supported by appropriate factual data.

Respectfully submitted,

CALVIN K. HAMILTON
United States Attorney

By _____
ANTHONY P. NUGENT, JR.
Assistant U. S. Attorney

I hereby certify that a copy of the foregoing has been mailed this 26th day of May, 1969, to Jon Waller, Esq., The Legal Aid Society, 1029 Oak, Kansas City, Missouri, counsel for defendant.

_____
ANTHONY P. NUGENT, JR.
Assistant U. S. Attorney

APPENDIX B