**UNITED STATES of America,**
**Plaintiff,**

v.

**Carol Margaret GILLESPIE, Defendant.**

**No. 23800–2.**

United States District Court,
W. D. Missouri, W. D.

July 28, 1972.

Bert C. Hurn, U. S. Atty., Sheryle L. Randol, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Ronald M. Sokol, Asst. Federal Public Defender, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

### I.

JOHN W. OLIVER, District Judge.

This case presents the question of what disposition should be made, in light of the command of Section 3401, Title 42, United States Code, of an indictment pending against a defendant who has been civilly committed under the Narcotic Addict Rehabilitation Act. That section declares that "[I]t is the policy of the Congress that certain persons charged with or convicted of violating Federal criminal laws, who are determined to be addicted to narcotic drugs, and likely to be rehabilitated through treatment, should, *in lieu of prosecution or sentencing,* be civilly committed for confinement and treatment designed to effect their restoration to health, and return to society as useful members" [Emphasis ours].

The defendant in this case, acting pursuant to rights accorded her by Section 3412, Title 42, United States Code, established to the satisfaction of the United States Attorney that there was reasonable cause to believe that she was a narcotic addict and that appropriate State or other facilities were not available for her treatment. Accordingly a petition for a NARA civil commitment was filed on her behalf by the United States Attorney's office on March 29, 1972.[1] After appropriate medical examination and after judicial hearing held June 13, 1972, this Court, acting pursuant to Section 3415, Title 42, United States Code, on that day committed the defendant to the care and custody of the Surgeon General for treatment. Under the provisions of that Act, the Surgeon General's custody may continue for a three year period.

In spite of the pendency of the NARA proceedings, on May 3, 1972, an Assistant United States Attorney other than the one handling the NARA proceeding,

1. Section 4251, Title 18, United States Code, defines an eligible offender as one who, among other things, has not "been convicted of a felony on two or more prior occasions." The defendant in this case is presently under sentence for felonies in both the State of Kansas and the State of Missouri. Both state courts have stayed execution of those sentences during successful NARA treatment. The United States Attorney, in accordance with principles enunciated in Watson v. United States (en banc, 1970), 141 U.S.App. D.C. 335, 439 F.2d 442, properly filed a NARA petition on defendant's behalf. The two-felony exclusion was held in Watson v. United States to be unconstitutional as applied to persons situated as is the defendant in this case. Because of our agreement with that case, we approved that action of the United States Attorney.

obtained an indictment against the defendant. When this Court made its NARA civil commitment on June 13, 1972, in recognition of the policy declared by the Congress that a NARA civil commitment should be in lieu of prosecution, it indicated from the bench that this criminal proceeding would be dismissed without prejudice. The Assistant United States Attorney who had obtained the indictment objected to that dismissal.[2] Accordingly, by joint order entered by both the Judge of Division I and the Judge of Division II of this Court, the United States Attorney's office was directed to state (a) any reasons it might have in support of its contention that this Court, under the circumstances presented, lacks power, jurisdiction and discretion to dismiss the above case; and (b) any reasons the United States Attorney's office may have as to why, under the circumstances of this case, the interests of justice require that this case not be dismissed without prejudice.[3]

On June 29, 1972, the United States Attorney's office filed its response to that order. Although that response stated that "our decision to prosecute was based upon careful consideration of all factors involved in the stated offenses," neither the Narcotic Addict Rehabilitation Act nor the Congressional policy underlying that legislation as declared in Section 3401, Title 42, United States Code, were cited or discussed.

■ We find and conclude that a person who has been adjudicated to be a narcotic addict likely to be rehabilitated and who has been civilly committed to the care and custody of the Surgeon General under the Narcotic Addict Rehabilitation Act may not properly be indicted or tried so long as a civil NARA

Proceeding is pending. We further conclude that proper recognition of the declared policy of the Congress and our duty to protect the public interest by avoiding substantial constitutional questions as they relate to the defendant's right of speedy trial, require that this Court dismiss the pending indictment without prejudice.

### II.

The legislative history of the Narcotic Addict Rehabilitation Act of 1966 demonstrates that the Congress gave careful and detailed consideration to the policy declared in Section 3401 that treatment, in lieu of prosecution, was to be afforded narcotic addicts who are judicially determined to be likely to be rehabilitated. A portion of that history appears in House Report No. 1486, U.S.Code Congressional and Administrative News, 89th Congress, Second Session, 1966, page 4245. That Report stated that the procedures provided "mark a fundamental reorientation toward the problem of addiction" in that the legislation "provides the flexibility to enable Federal authorities to treat the unfortunate addict who is capable of rehabilitation to render assistance in a manner which will enable him to extricate himself from an otherwise hopeless and repetitious pattern of addiction and crime." (Ibid, p. 4249). The Report stated that "this legislation provides a basis for intelligent and informed cooperation between the medical profession, the courts, and the correctional agencies of the Federal Government." (Ibid, p. 4255).

The Report noted the testimony of the then Director of the Bureau of Prisons, Mr. Myrl E. Alexander, who testified that between 1,200 and 1,500 drug users, convicted of all manner of federal

---

2. The objection was stated as follows:
 MRS. RANDOL: Your Honor, the United States objects to any such dismissal in any form, for the reasons, first of all, this case has been assigned to Judge Collinson; second of all, this is a prosecuting decision, and the United States in that regard has exercised its discretion, has returned—sought the in-

dictment, indictment has been returned, and we do not intend at this time to dismiss that indictment. [Tr. of June 13, 1972 proceeding, p. 5].

3. A copy of that order is attached hereto as Appendix A and is incorporated herein by this reference.

criminal offenses, were committed to federal correctional institutions each year. He stated, however, "that the experience of Federal penal authorities was that they had not had great success in their efforts to rehabilitate narcotic addicts" and that "[O]ne of the greatest areas of weakness in the present method is the lack of really adequate postrelease support and supervision of former addicts." (Ibid, p. 4253). Mr. Alexander observed that "civil commitment is not easier or softer than commitment under sentence."[4]

There is nothing in the legislative history of the Narcotic Addict Rehabilitation Act to support the notion that a United States Attorney has either power or discretion to proceed with prosecution, in lieu of treatment, in regard to persons who could be charged with violating federal criminal laws who have been judicially determined under the Act to be addicted to narcotic drugs and who are likely to be rehabilitated. The Report explained the purpose of what is now § 3412(b), the section of the Act which places a mandatory duty upon the United States attorney to file a petition for NARA commitment, as follows:

> Section 302(b) [present Section 3412(b)] provides that if the U. S. attorney, after considering such petition and consulting with appropriate Federal, State, and local officials, finds (1) that there is reasonable cause to believe that the person named in such petition is a narcotic addict, and (2) that appropriate State or other facilities are not available to such person, he shall file a petition with the U. S. district court to commit such person to a hospital of the Service for care, protection, and treatment as provided in this title. The requirement that the U. S. attorney consider the availability of State or local facilities before petitioning to commit the alleged addict to Federal facilities is to insure that the Federal commitment

procedure will not preempt the primary responsibility of those States which are equipped to handle some or all of their addiction problems. The requirement that the petition for a court order of commitment be filed by the U. S. attorney is to insure that the commitment proceeding will be an adversary proceeding in which both the addict or alleged addict and the United States are represented and entitled or required, as the case may be, to establish that the necessary basis for commitment does or does not exist. (Ibid, p. 4265).

■ It is clear, we believe, that the Congress did not intend to vest discretion in the United States Attorney as to whether an eligible narcotic addict is to be afforded the benefit of treatment under the Narcotic Addict Rehabilitation Act.

All Congressional action subsequent to the 1966 Act has supported and expanded the original legislation. The legislative history of that subsequent legislation shows that the Congress has adhered to its declared policy that drug addicts are to be treated rather than prosecuted. The Comprehensive Drug Abuse Prevention and Control Act of 1970 was designed "to deal in a comprehensive fashion with the growing menace of drug abuse in the United States." House Report No. 91–1444, U.S.Code Congressional and Administrative News, 91st Congress, Second Session, 1970, p. 4567. That Report's summary of the 1970 bill shows that $75 million over a three year period was earmarked for "the Department of Health, Education and Welfare to increase its efforts in the rehabilitation, treatment, and prevention of drug abuse, through community mental health centers and through public health service hospitals and facilities" (Ibid, p. 4569). That Report stated that the 1970 legislation was designed to authorize additional and special assistance to implement the 1966 legislation (Ibid, p. 4586), and in-

4. As will be noted later in the text, it was not until 1972 that the Congress expanded the 1966 Act to the degree recommended by the Director of the Bureau of Prisons in 1966.

dicated its express approval of the 1966 legislation in other respects. (e. g., ibid, p. 4587).

By its most recent enactment of Public Law 92–293, 92 Cong., S. 2713, approved May 11, 1972, Congress again broadened the coverage of the Narcotic Addict Rehabilitation Act of 1966. House Report No. 92–941, U.S.Code Congressional and Administrative News, 92 Congress, Second Session, No. 5, issued June 20, 1972, shows that the original exemptions of the 1966 Act were recognized to have been too strict and that those exemptions have had the effect of foreclosing rehabilitation and treatment efforts for large numbers of drug addicts and abusers who could, under the 1966 Act, only be sentenced to serve prison terms for Federal offenses. That Report also recognized that drug treatment programs inside correctional institutions, as the Director of the Bureau of Prisons had testified in 1966, were doomed to failure because such programs "cannot fully prepare these individuals for the pressures of job, home, family, and associates they will face when they complete their sentences of imprisonment or are released on parole. Aftercare counseling, both individually and in groups, is essential to improving the offenders' chances of following a drug-free and crime-free life-style when they are on the street." (Id. 1618–1619).[5] The widening of the treatment coverage in the 1972 legislation, to use the words of the House Report, "is parallel to that of the legislation passed in 1970 permitting parolees and probationers to be referred to community treatment centers."

The legislative history of the original NARA Act of 1966 and that of both the 1970 and 1972 amendments establishes that Congress meant what it said when it declared that eligible persons judicially determined to be narcotic addicts likely to be rehabilitated shall be afforded medical treatment in lieu of prosecution. That Congressional policy leaves no room for the exercise of discretion on the part of either the executive or judicial branches of the government.[6]

Congress has made clear, in the language of House Report No. 1468, supra, that a NARA civil commitment "offers an eligible addict the possibility of obtaining medical treatment and the opportunity for rehabilitation along with the hope of avoiding the stigma of a criminal trial and possible conviction" (Ibid, p. 4251). All branches of the government were directed to exhaust the possibilities of medical treatment afforded by a NARA civil commitment which "in its essence makes it possible to extend an opportunity for treatment and rehabilitation. . . . while holding a criminal charge in abeyance" (Id. 4251). As stated in United States v. Phillips, (6th Cir., 1968) 403 F.2d 963, 965, "If he is an addict eligible for treatment under the Act, the procedures provided for in the Act should be followed unless there is some good reason for not doing so."

In every NARA case processed in this district, excepting only this case, the United States Attorney's office has, in accordance with the declared policy of Congress, held every possible federal criminal charge in abeyance by simply

---

5. Attorney General Mitchell's letter to the Speaker of the House in support of the 1972 legislation stated: "There is little question that narcotic addiction and criminal activity are interrelated. Yet many Federal addict-offenders, not eligible for NARA, are released to society without any type of follow-up treatment for their addiction."

6. See and compare United States v. Williams, (4th Cir., 1969) 407 F.2d 940, in which it was stated: "We hold that the district judge is responsible for exercising his sound discretion as to the treatment or imprisonment, under the Narcotic Addict Rehabilitation Act, of those eligible defendants who come before him. The failure to exercise discretion is error which may be corrected by remand for resentencing." See also Watson v. United States, (1969) 133 U.S.App.D.C. 87, 408 F.2d 1290 at 1293, in which the court recognized that in like manner and under particular circumstances "the exercise of such prosecutorial discretion [under the Narcotic Addict Rehabilitation Act] may be subject to judicial review."

determining that no criminal complaint should be filed or presented to a grand jury until after treatment under NARA may have failed. In this case, however, the United States Attorney's office not only obtained an indictment after the commencement of the NARA proceeding, but that office presently takes the position that its apparent policy of prosecution in lieu of treatment is not subject to judicial control.

Contrary to the position reflected by the response filed by the United States Attorney's office, we are convinced that consideration of the proper disposition of the pending criminal indictment must include appropriate recognition of the policy of Congress as declared in Section 3401, Title 42, United States Code. We are also convinced that the public interest requires that consideration must likewise be given the possible consequences of any disposition of this case other than dismissal of the pending indictment without prejudice.

Although not mentioned in the response of the United States Attorney's office, it is obvious that consideration must be given to whether, consistent with the Congressional declaration of policy and other applicable factors, the Court should order that all further proceedings in regard to the indictment be stayed during the pendency of the NARA proceeding. For reasons stated in the next part of this opinion, the entering of a stay order in this criminal prosecution would not be an appropriate alternative to hold the criminal prosecution in abeyance.

### III.

The Supreme Court of the United States has recently considered the Sixth Amendment's guaranty of a speedy trial in United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), and Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 decided June 22, 1972. The principles enunciated in those cases must be given appropriate consideration in this case; for it is quite apparent that the defendant in this case may be immune from prosecution for the full three year period of Surgeon General's custody ordered by this Court on June 13, 1972. Hopefully, defendant will respond to the medical treatment available under the provisions of NARA and she will be returned to society as a useful citizen.[7]

The question presented in *Marion* was whether an elapse of three years between the government's knowledge of the occurrence of the alleged crimes with which the defendants were subsequently indicted constituted a *per se* violation of the Sixth Amendment. *Marion* answered that question in the negative. It concluded that "the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused'" (404 U.S. at 313, 92 S.Ct. at 459).

---

7. The data in the NARA civil commitment proceedings establishes that the defendant is a quite typical NARA candidate. It shows that defendant is now 28 years old; that she graduated from high school in Milwaukee and that, at age 18, she entered into her first marriage to a man aged 29. A son, now ten, was born of that marriage. Defendant's first husband died of lung cancer in 1968. Up to that point in defendant's life she had no difficulties with the law whatever. The NARA data shows, however, that two years ago defendant married for the second time; unknown to her, her second husband was a drug addict who introduced her to drugs; that her habit reached a street price of some $60 a day and that her criminal offenses, particularly after she was abandoned by her second husband, followed the usual pattern of nonviolent crime to get money to pay for her habit.

The government's response shows that the checks for which the federal government wishes to prosecute the defendant, in lieu of treatment, were all passed during the period of her addiction. The United States Attorney does not suggest that the pattern of this case is any different than that usually presented in prosecutions of drug addicts generally. For a description of a defendant with a background similar to that of the defendant in this case, see Watson v. United States, *supra*.

■■ That case made clear, however, that "a formal indictment [does] engage the particular protections of speedy trial provision of the Sixth Amendment" and that "the major evils protected against by the speedy trial guarantee" are the public acts incident to indictment and arrest" that may seriously interfere with the defendant's liberty, whether he is on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends" (404 U.S. at 320, 92 S.Ct. at 463). The concurring opinion in *Marion* stated the obvious in its beginning sentence which said: "I assume that if the three-year delay in this case had occurred *after* the indictment had been returned, the right to a speedy trial would have been impaired and the indictment would have to be dismissed" (404 U.S. at 326, 92 S.Ct. at 466, emphasis the Court's). And *Marion* made clear by its quotation from United States v. Cadarr, 197 U.S. 475, 478, 25 S.Ct. 487, 49 L.Ed. 842 (1905), that that case still states the law when it said that "the mere failure to find an indictment will not operate to discharge the accused from the offense nor will a *nolle prosequi* entered by the Government" have that effect. *Marion* therefore establishes (1) that time for speedy trial begins to run when an indictment is filed and (2) that either the failure to indict or a dismissal without prejudice of an indictment cannot be said to discharge the defendant from possible future prosecution.

Barker v. Wingo held that speedy trial questions cannot be determined by some inflexible rule and that each case must be decided on the *ad hoc* balancing basis, in which the conduct of the prosecution and the defendant are to be weighed. That case makes clear, however, that the responsibility for guaranteeing a particular defendant's right to a speedy trial rests upon the Court.

Barker v. Wingo rejected the rule "that a defendant who fails to demand a speedy trial forever waives his right." Rather, the Supreme Court adopted the principle in that case which "allows the trial court to exercise a judicial discretion based on the circumstances" of each particular case.

Among the four factors stated in Barker v. Wingo which must be given appropriate consideration in ruling a speedy trial question is the prejudice which may be suffered by the defendant. Mr. Justice Powell pointed out in that case that "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraint on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." Any anxiety which may be created by a pending federal criminal indictment during a federal NARA civil commitment for treatment for drug addiction should be avoided. Such anxiety could be the difference between successful and unsuccessful treatment. Even an appearance of hostility toward the declared congressional purpose should be avoided.

■ Because the time for speedy trial begins to run from the date of indictment, it is obvious that the danger of depriving the defendant of his right to a speedy trial under the particular circumstances of this case is sufficiently strong to require that in the interest of justice the pending indictment be dismissed without prejudice. Such action, of course, would not foreclose a new indictment at some later time should the Surgeon General recommend the dismissal of the NARA proceeding. Any disposition short of dismissal without prejudice would not avoid the speedy trial question. Under present circumstances, the defendant has a right to treatment in lieu of prosecution. It is obvious that she cannot be prosecuted as long as she is undergoing treatment in the custody of the Surgeon General. Should this Court do no more than stay further proceedings in the criminal case, it is possible that the government might lose all opportunity to prosecute the defendant. The public interest requires that that possibility be avoided. We con-

clude that a dismissal without prejudice is the only appropriate disposition which protects the defendant's right to treatment and the government's right to a possible future prosecution in the event treatment fails.

■ In the event some future federal indictment after failure of NARA treatment is filed, it is obvious that the defendant could not successfully maintain that, within the meaning of Rule 48(b), there was "unnecessary delay in presenting the charge to a grand jury" because the delay would be one necessarily required by the Narcotic Addict Rehabilitation Act and by this Court's action, consistent with that Act, to make certain that civil treatment process, rather than prosecution, be fully exhausted before criminal prosecution be commenced.

## IV.

As we have noted, the response of the United States Attorney's office does not even mention the Narcotic Addict Rehabilitation Act. Rather, the general thrust of that response suggests that some sort of historic confrontation between the executive and judicial branches of the government is somehow presented by this Court's discharge of its duty to see that the Congressional policy mandated in NARA is properly executed. The United States Attorney's office's notion that this Court is without power to dismiss any indictment without its consent is based upon its construction of Rule 48(b) of the Rules of Criminal Procedure.

The United States Attorney's office takes the position that Rule 48(b) of the Rules of Criminal Procedure effectively limits "the Court's power to dismiss an

indictment or information to specific circumstances of want of prosecution." [8]

The response of the United States Attorney's office flatly states that "Decisions on prosecution are a matter of executive determination and are forbidden from review by the judiciary;" that "the position of the Office of the United States Attorney is that the choice of whether a case is to be prosecuted or not prosecuted is a matter of prosecutorial discretion;" and that "we emphasize that at no stage is the discretion to prosecute, no matter how sage or improvident, properly subject to judicial review."

It is, of course, true that under the Constitution the executive power is vested in the President of the United States (§ 1 of Art. II) who is required to take care that the laws be faithfully executed (§ 3 of Art. II). And it is settled law that the Attorney General is the head of the Department of Justice, and that he, acting through United States Attorneys, "is the hand of the President in taking care that the laws of the United States in protection of the interests of the United States in legal proceedings and in the prosecution of offenses be faithfully executed." Ponzi v. Fessenden, 258 U.S. 254 at 262, 42 S.Ct. 309 at 311, 66 L.Ed. 607 (1922).

But recognition of those elementary principles implicit in the doctrine of separation of powers does not sustain the notion that a United States Attorney has power to obtain and prosecute any and all indictments which he deems to be proper. [9]

The United States Attorney's office does not cite any authority to support its notion that Rule 48(b) somehow limits

---

8. Rule 48(b) provides: "If there is unnecessary delay in presenting the charge to the grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

9. Mr. Justice Powell's recent opinion in United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), decided June 19, 1972, makes clear that even the power of the President of the United States is subject to appropriate judicial review. We deem it both inappropriate and unnecessary to review the doctrine of judicial supremacy under which the Constitution and laws of the United States have been executed since at least the time of Chief Justice John Marshall.

the inherent power of a district court to dismiss an indictment solely for "want of prosecution." We recognize, of course, that the Notes of the Advisory Committee on Rule 48(b) cite Ex parte Altman, (S.D.Cal., 1940) 34 F.Supp. 106, in support of a general statement that "This rule is a restatement of the inherent power of the court to dismiss a case for want of prosecution." But neither that case nor any other portion of the Notes suggest that Rule 48(b) was designed to be a limitation upon a federal court's general inherent power to dismiss a prosecution for any number of valid reasons, including but not limited to dismissals for want of prosecution. Indeed, *Ex parte Altman* makes clear that a federal court's inherent power to dismiss is directly related to the Sixth Amendment's guaranty of speedy trial. United States v. Dooling, (2nd Cir., 1969) 406 F.2d 192, and 196, one of the cases cited by the United States Attorney's office, decided after Rule 48(b) was promulgated, held that Rule 48(b) "implements the right to a speedy trial guaranteed by the Sixth Amendment." See also Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); United States v. Provoo, (D. Md., 1955) 17 F.R.D. 183, aff'd. mem. 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761.

 We conclude that Rule 48(b) does not and was not intended to limit the inherent power of this Court to dismiss the pending indictment under the circumstances of this case. We further conclude that the arguments concerning that rule as stated in the United States Attorney's office's response are untenable.[10]

### V.

 The government's objection to this Court's dismissal without prejudice of an indictment pending against a per-

son judicially determined to be eligible for NARA treatment and of the United States Attorney's office insistence that prosecution, in lieu of NARA treatment, is within the exclusive discretion of the United States Attorney's office obviously present fundamental questions in regard to how the declared policies of the Congress in regard to drug addicts and drug abusers are to be executed and administered. We have stated our view of the applicable law. We are concerned, however, that the fact that those questions arose in this district in this isolated case might create an erroneous impression of the manner in which every United States Attorney since 1966 has expended their time and talent in the administration and support of the NARA program.

Implementation of the fundamental reorientation of treatment rather than prosecution mandated by NARA and its 1970 and 1972 amendments has not been without the difficulties usually encountered in making changes from old practices to new. United States v. Pollard, (W.D.Mo., en banc, 1969) 300 F.Supp. 1063, reflects but one example of the growing pains incident to the implementation of the NARA program.

We know of no judicial district in the United States in which past and present United States Attorneys have so conscientiously endeavored to cooperate with the Surgeon General, the Department of Health, Education, and Welfare, and their designees in their consistent efforts to make the NARA legislation attain the objectives stated in the policies declared by the Congress in Section 3401, Title 42, United States Code.

We have added these words to negate any notion that this case reflects some sort of general reluctance on the part of the present United States Attorney for the Western District of Missouri to see

---

10. The response of the United States Attorney's office states that it is under the impression that "The Court's prime factor in deciding to dismiss would be to husband the Court's time and resources." Simply for purposes of the appeal which the government has indicated it wishes to take, we state that the impression under which United States Attorney's office is laboring is erroneous and that such impression is unsupported by the record or otherwise.

that the laws of the United States in regard to drug addiction are not to be faithfully executed as enacted by the Congress. We must assume that the Assistant United States Attorney in charge of the criminal prosecution involved in this case requested and was granted permission to raise the heretofore undetermined questions in order that those questions which relate to the administration of relatively recently enacted legislation be decided.

Judge William R. Collinson, who joined in the issuance of the joint order of June 19, 1972, has authorized me to state that he concurs with what has been said in this memorandum opinion.

For the reasons stated, it is

Ordered that the pending indictment should be and the same is hereby dismissed without prejudice.

### APPENDIX

### MEMORANDUM AND ORDER

The files and records of this Court show that on March 29, 1972, the United States Attorney's office, acting through Assistant United States Attorney Vernon A. Poschel, filed a petition on behalf of the defendant herein as a petitioner under the Narcotics Addict Rehabilitation Act. That case, entitled In the Matter of CAROL MARGARET GILLESPIE, No. 20227–1, was assigned to Division 1 of this Court.

On April 28, 1972, during the processing of that civil proceeding and during the course of considering the report of the two physicians designated to make the required evaluation of the defendant under the provisions of NARA, Assistant United States Attorney Poschel directed the Court's attention to the fact that another Assistant United States Attorney was considering the presentment of evidence to a grand jury to seek the indictment which was subsequently obtained in this case. The Court requested that the United States Attorney's office give consideration to the fact that it had invoked the civil jurisdiction of this Court on petitioner's behalf under

NARA and that the processing of the NARA proceeding was already sufficiently complicated by the fact that the petitioner was at that time under sentences imposed by state courts, both in Kansas and in Missouri.

On June 13, 1972, Division 1 of this Court gave further consideration to the NARA evaluation in Case No. 20227–1 and entered its order committing the petitioner to the custody of the Surgeon General under the provisions of NARA. During the course of that proceeding the Court learned that the United States Attorney's office apparently had given no consideration to this Court's request made April 28, 1972, and that a grand jury on May 3, 1972, had in fact returned the indictment prepared by Assistant United States Attorney Sheryle L. Randol on May 3, 1972. Over the objection of Assistant United States Attorney Randol, the Court, by bench order, stated that the indictment in this case would be dismissed without prejudice.

Upon leaving the bench, the attention of the judge of Division 1 was directed to the fact that this case had been assigned to Division 2 of this Court. Shortly thereafter, First Assistant United States Attorney J. Whitfield Moody, accompanied by Assistant United States Attorney Randol, called upon the judge of Division 1 to make inquiry concerning the dismissal of this case. First Assistant United States Attorney Moody and Assistant United States Attorney Randol suggested that no judge had either power or discretion to dismiss this case over the objection of the United States Attorney's office. The judge of Division 1 advised Mr. Moody that he had just learned of the assignment situation and that he intended to discuss the matter with Judge Collinson. Mr. Moody was also told that if both judges were in agreement the case should be dismissed, he would be so advised.

The judge of Division 1 conferred with the judge of Division 2 and thereafter advised Mr. Moody that both judges were agreed that the order of dismissal should be entered of record. Mr. Moody was

**1246**

also advised that if the government decided it did not wish to seek a review of the order of dismissal, the judge of Division 2 would enter the formal order; but if the government did wish to seek a review, in order to avoid possible procedural confusion, the bench order of Division 1 would be set aside, a formal order of transfer of this case from Division 2 to Division 1 would be entered, and further appropriate proceedings would be taken to reflect the full circumstances of the dismissal. Mr. Moody was requested to advise the judge of Division 1 when the government reached its decision.

The law clerk of the judge of Division 1 has advised this Court that Assistant United States Attorney Randol has advised him that the government intends to seek a review of the dismissal without prejudice. Although Mr. Moody has not directly advised the Court, we must assume that this reflects the government's position in connection with this matter.

Accordingly, and for the reasons stated, it is

Ordered by the Judge of Division 1 that its bench order dismissing the above case without prejudice should be and the same is hereby set aside. It is further

Ordered by the Judge of Division 2 of this Court that the above case should be and with the consent of the judge of Division 1, is transferred to Division 1 of this Court for all further proceedings. It is further

Ordered, in light of the fact that the defendant has not yet appeared before the United States Magistrate, that the Federal Public Defender's office is appointed to represent the defendant. It is further

Ordered that the order for warrant of arrest routinely issued May 3, 1972 should be and the same is set aside and withdrawn. It is further

Ordered that within ten (10) days the United States Attorney's office shall prepare, serve, and file an appropriate statement of any reasons it may have to support its contention that (a) this Court, under the circumstances presented, lacks power, jurisdiction, and discretion to dismiss the above case; and (b) the reasons the United States Attorney's office may have as to why, under the circumstances of this case, the interests of justice require that this case not be dismissed without prejudice. It is further

Ordered that the filings directed shall be served and filed in this case but that copies of all of such filings shall be transmitted to Judge Collinson for his information.

(s) JOHN W. OLIVER
Judge of Division 1

(s) WM. R. COLLINSON
Judge of Division 2

Kansas City, Missouri
June 19, 1972.